1

The Honorable Stanley A. Bastian

WILLIAM M. SYMMES, WSBA No. 24132
STEVEN J. DIXSON, WSBA No. 38101
SAWYER R. MARGETT, WSBA No. 53223
WITHERSPOON • KELLEY
422 W. Riverside Ave., Suite 1100
Spokane, WA  99201
Telephone:  (509) 624-5265
Facsimile:  (509) 458-2728
Email:    wms@witherspoonkelley.com
          sjd@witherspoonkelley.com
          srm@witherspoonkelley.com

JESSE L. MILLER (*Pro Hac Vice Pending*)
JENNIFER R. FEARNOW (*Pro Hac Vice Pending*)
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: (415) 543-8700
Facsimile:  (415) 391-8269
Email:    jessemiller@reedsmith.com
          jfearnow@reedsmith.com

*Attorneys for Defendant Greyhound Lines, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Plaintiff,<br><br>vs.<br><br>GREYHOUND LINES, INC.,<br><br>                    Defendant. | No. 20-CV-209-SAB<br><br>GREYHOUND LINES, INC.'S MOTION AND AND MEMORANDUM TO DISMISS<br><br>August 20, 2020 (Spokane)<br>With Oral Argument: 2:00 PM |

## NATURE OF MOTION/RELIEF SOUGHT

The State of Washington (the "State") filed suit in Spokane County Superior Court alleging violation of the Consumer Protection Act and discrimination under Washington law.  Greyhound Lines, Inc. ("Greyhound") removed the action to this Court under 29 U.S.C. §1442 on June 5, 2020.  [ECF No. 1]  Greyhound now moves to dismiss the Complaint for the following reasons.  First, the Complaint fails to state a claim for which relief can be granted under FRCP 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Second, under FRCP 12(b)(7), Plaintiff failed to join, and failed to plead reasons for not joining as a necessary party under FRCP 19, the U.S. Customs and Border Protection ("CBP").

## SUMMARY OF ARGUMENT

### I.   INTRODUCTION

At its core, Plaintiff's Complaint is based on allegations to this effect:  (1) to comply with the Washington Consumer Protection Act ("CPA") and the Washington Law Against Discrimination ("WLAD"), Greyhound *must* bar CBP agents from (a) boarding and searching its buses at the Spokane Intermodal Center without a warrant or consent or reasonable suspicion, and (b) accessing its non-public property there in order to board and search its buses; but (2) Greyhound violated the CPA and WLAD because it did *not* bar CBP agents from doing so.  [ECF No. 1-1 at 18-19, 33-36] Compl. ¶¶ 1-4, 51, 55, 59, 63, 66, and 70.

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

1    The theme of the Complaint is that, by acting and failing to act as it did,

2  Greyhound practiced and condoned, and continues to practice and condone,

3  discrimination against its passengers of color, particularly its Latino passengers.

4    The allegations of Complaint must be viewed through the prism of the governing

5  law.

6    8 U.S.C. § 1357 ("Section 1357") authorizes CBP agents, among others, "within

7  a reasonable distance from any external boundary of the United States, to board and

8  search" "any … vehicle" "for aliens," without the need to comply with any requirement

9  for a warrant.  8 U.S.C. § 1357(a)(3).  Because Section 1357 frees CBP agents from any

10  requirement for a warrant, a fortiori it frees them from any need for any exception

11  justifying or excusing failure to comply with any such requirement, such as consent, *see*

12  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), or reasonable suspicion, *see*

13  *Terry v. Ohio*, 392 U.S. 1, 20-24 (1968).  8 C.F.R. § 287.1 ("Regulation Section 287.1")

14  defines "reasonable distance" from an external boundary to mean "within 100 air miles"

15  from any such external boundary.  8 C.F.R. § 287.1(a)(1).

16    In conjunction with Section 1357, the Fourth Amendment allows law

17  enforcement officers, including CBP agents, to make stops at checkpoints without a

18  warrant or consent or reasonable suspicion, even if the stop is largely based on

19  ethnicity.  That is true if the checkpoint is fixed.  *See United States v. Montoya de*

20  *Hernandez*, 473 U.S. 531, 537 (1985).  That is also true if the checkpoint is temporary.

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

*See United States v. Hernandez,* 739 F.2d 484, 485 (9th Cir. 1984).  A location can become a temporary checkpoint if CBP agents treat it as such.  *United States v. Angulo-Guerrero*, 328 F.3d 449, 453 (8th Cir. 2003) (Loken, C. J., conc.).

When this Court views the allegations of the Complaint through the prism of Section 1357 and the Fourth Amendment, it will find them wanting.

Greyhound does not practice or condone discrimination against any of its passengers of color, including particularly its Latino passengers.  All that it does is comply, as it must, with Section 1357.  Should CBP or its agents practice or condone discrimination, they may, and should, be held accountable for it.

This Court should dismiss the Complaint without leave to amend because (1) the CPA and WLAD are in conflict with Section 1357 and, as such, are preempted, and (2) Plaintiff failed to join CBP as a necessary party and failed to plead reasons for not joining it.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Greyhound Is a Pervasively-Regulated Business

For more than a century, Greyhound has provided intercity transportation services throughout North America.  As a passenger carrier operating in interstate commerce, Greyhound is pervasively regulated.  Greyhound is subject to the jurisdiction of the Federal Motor Carrier Safety Administration ("FMCSA"), an agency within the Department of Transportation.  Among other things, the FMCSA regulates

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

safety, drivers and their qualifications, and record-keeping standards, and it is authorized by statute and regulation to board and inspect subject vehicles in operation. *See* 49 U.S.C. § 31502; 49 C.F.R. 396.9.

Because Greyhound receives federal funds, it is subject to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq.  This is set forth on Greyhound's website with a required notice that it will not discriminate against its passengers on account of any protected characteristic.  [ECF No. 1-1 at 45-48] Compl. Ex. 3.

### B.    The INA Act of 1952

In 1952, Congress passed the Immigration and Nationality Act ("INA").  One provision is Section 1357.  Section 1357 provides authority, without a warrant, to board any vehicle within a reasonable distance of an external boundary of the United States to search for aliens.  8 U.S.C. § 1357(a)(3).  Regulation Section 287.1 defines a reasonable distance to be within 100 air miles of any such external boundary, 8 C.F.R. § 287.1(a)(1), which includes the United States-Canada border.

### C.    Pre-Complaint Events

On April 6, 2018, Greyhound met with Department of Homeland Security (DHS) in Washington, DC to seek clarification and express its concerns with CBP's enforcement of Section 1357.  Greyhound shared with DHS that it intended to follow the law but needed more specific guidance about Greyhound's rights when enforcement officers entered its buses and terminals. Greyhound also requested written CBP

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

documentation that explained Greyhound's and customers' rights during CBP

questioning.  Greyhound sought a written policy that explained CBP's anti-

discrimination rules.  DHS informed Greyhound that CBP had the legal right to board

buses and conduct immigration checks at terminals without consent or a warrant.  It was

clearly conveyed that Greyhound needed to follow the directions of federal officers

during immigration checks.  Notice of Removal, Ex. D [ECF No. 1-4] (attaching a true

and correct copy of the Greyhound CEO's itinerary and the Agenda for the April 6,

2018 meeting between DHS/CBP and Greyhound).

CBP continues to publicly assert its broad authority to conduct searches and

immigration checks including the Spokane Intermodal Facility specifically.  In fact, in

response to the complaints by Greyhound passenger Mohanad Elshieky, [ECF No. 1-1

at 31] ¶ 42, CBP stated:

> For decades, the U.S. Border Patrol has been performing enforcement
> actions away from the immediate border in direct support of border
> enforcement efforts and as a means of preventing trafficking, smuggling and
> other criminal organizations from exploiting our public and private
> transportation infrastructure to travel to the interior of the United States.
> These operations serve as a vital component of the U.S. Border Patrol's
> national security efforts.
>
> ***Although most Border Patrol work is conducted in the immediate border
> area, agents have broad law enforcement authorities and are not limited to
> a specific geography within the United States.*** They have the authority to
> question individuals, make arrests, and take and consider evidence. The
> Immigration and Nationality Act 287(a)(3) and 8 USC 1357 state that
> Immigration Officers, without a warrant, may 'within a reasonable distance
> from any external boundary of the United States...board and search for aliens
> in any vessel within the territorial waters of the United States and any

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

railcar, aircraft, conveyance, or vehicle.' A reasonable distance is defined by 8 CFR 287 (a)(1) as 100 air miles from the border.

*See* Associated Press, Portland comedian questioned by Border Patrol agents in Spokane, WA (Jan. 28, 2019), available at https://katu.com/news/local/portland-comedian-questioned-by-border-patrol-agents-in-spokane-wash (emphasis supplied).

When DHS and CBP told Greyhound, and the general public, that it is not a matter of consent but rather an obligation under Section 1357, it cannot properly be said that Greyhound "allowed" anything. DHS and CBP were the actors and Greyhound their passive subject.

### D.    Plaintiff's Complaint and What It Alleges—And Fails to Allege

On April 13, 2020, Plaintiff filed the Complaint in the Superior Court of Washington for the County of Spokane (Case No. 20-2-01236-32). On May 15, 2020, Plaintiff served the Complaint on Greyhound. *Id.* On June 5, 2020, Greyhound filed its Notice of Removal in this Court. [ECF No. 1].

As noted, at its core, Plaintiff's Complaint is based on allegations to this effect: (1) to comply with the CPA and WLAD, Greyhound *must* bar CBP agents from (a) boarding and searching its buses at the Spokane Intermodal Center without a warrant or consent or reasonable suspicion, and (b) accessing its non-public property there in order to board and search its buses; but (2) Greyhound violated the CPA and WLAD because it did *not* bar CBP agents from doing so.

In addition, the Complaint alleges as follows:

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

1    According to the Complaint, Greyhound provides intercity bus transportation

2  services throughout North America.  [ECF No. 1-1 at 20].  Greyhound's business

3  operations include various locations within the State of Washington, including at the

4  Spokane Intermodal Center, which is a transit hub owned by the City of Spokane in

5  downtown Spokane, and which serves as a station, re-fueling, and service stop for

6  Amtrak, as well as the Greyhound, Trailways, and Jefferson Lines bus lines, with city-

7  contracted security and a police precinct on site  *Id.*  Greyhound leases space at the

8  Spokane Intermodal Center.  *Id.*

9    The Complaint goes on:  Greyhound has a policy of allowing CBP agents to

10  board its buses to carry out immigration checks at the Spokane Intermodal Center.  *Id.*

11  *Id.* at 18-19, ¶¶ 1-3.   Greyhound facilitated CBP's actions at the Spokane Intermodal

12  Center by "allowing CBP agents access" to its buses and to its non-public areas there.

13  *Id.* at 25, ¶ 23.  "Allowing" CBP agents such "access" practices and condones

14  discrimination against its passengers of color, particularly its Latino passengers,

15  because Greyhound promised to provide "safe," '"reliable," and "dependable" bus

16  service to customers, and violated that promise by granting CBP agents "permission" to

17  access "its bus stations" and board its buses for the purpose of immigration sweeps.

18  [ECF No. 1-1 at 19, 34-35].  ¶¶ 3 & 59.  CBP agents "have routinely conducted

19  warrantless and suspicionless searches operations" that are "immigration enforcement

20  sweeps where CBP agents board and inspect common carriers, such as buses that

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

private companies like Greyhound operate, at locations away from the U.S. border and away from formal checkpoints, to determine whether passengers are in the United States legally." *Id.* at 22, ¶ 18. "CBP's approach to conducting enforcement sweeps relies on the cooperation of companies that operate common carriers, like Greyhound." *Id.* at 25, ¶ 23.

Supposedly, according to the Complaint, the Spokane Intermodal Center "is a non-checkpoint location that is not located on or near an international border." *Id.* at 26, ¶ 27. Because that is supposedly so, "CBP agents may constitutionally board Greyhound buses and/or access its non-public spaces only with a valid warrant, reasonable suspicion, or Greyhound's consent." *Id.* Supposedly, Greyhound "could at any time have informed CBP that it did not consent." *Id.*

Although making all of these allegations, the Complaint neglects to mention that the Spokane Intermodal Terminal is 97 air miles from the United States-Canada border. [ECF No. 1-1 at 25] ¶24, footnote 7. The Complaint also neglects to mention that CBP designates bus stations and intermodal facilities as temporary checkpoints even when they are more than 100 air miles from the border.

To remedy Greyhound's alleged violations of the CPA and WLAD, Plaintiff requests, among other forms of relief, an injunction compelling Greyhound to bar CBP agents from (1) boarding and searching its buses at the Spokane Intermodal Center

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

1  without a warrant or consent or reasonable suspicion, and (2) accessing its non-public

2  property there in order to board and search its buses.  [ECF No. 1-1 at 19, 37].

3  **III.   LEGAL STANDARD**

4       A motion to dismiss brought pursuant to Rule 12(b)(6) tests whether a complaint

5  states a claim for which relief can be granted.  A complaint does not "suffice if it

6  tenders 'naked assertion[s]' devoid of 'further factual enhancement.' "  *Ashcroft v.*

7  *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

8  557 (2007)).  "Factual allegations must be enough to raise a right to relief above the

9  speculative level."  *Bell Atlantic Corp.*, 550 U.S. at 555.  In addition, factual allegations

10  need not be "accept[ed] as true" if they "contradict matters properly subject to judicial

11  notice or by exhibit."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

12  2001).  Nor need "factual allegations" be "accept[ed] as true" if they are actually "legal

13  conclusion[s]."  *Ashcroft*, 556 U.S. at 678.  Moreover, where it is clear that amendment

14  would be futile, a complaint may be dismissed without leave to amend.  *See Havas v.*

15  *Thornton*, 609 F.2d 372 (9th Cir. 1979).

16       For its part, a motion to dismiss brought pursuant to Rule 19 of the Federal Rules

17  of Civil Procedure tests whether all persons who are required to be joined as parties

18  have been joined.  Pursuant to Rule 19, a person is required to be joined *either* if the

19  court cannot afford complete relief in the absence of the person *or* if the person claims

20  an interest relating to the subject of the action and is so situated that disposing of the

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

1    action in the person's absence may leave an existing party subject to a substantial risk

2    of incurring inconsistent obligations.  Fed. R. Civ. P. 19(a).  The plaintiff must plead

3    reasons for failing to join such a person.  *Id.* 19(c).  If such a person cannot be joined,

4    the action is subject to dismissal.  *Id.* 19(b).

5    **IV.   DISCUSSION**

6        The Complaint should be dismissed without leave to amend because (1) the CPA

7    and WLAD are in conflict with Section 1357 and, as such, are preempted, and (2)

8    Plaintiff failed to join CBP as a necessary party and failed to plead reasons for not

9    joining it.

10       **A.    State Law In Conflict With Federal Law Is Preempted**

11       Our federal Constitution provides that the laws of the United States are the

12   supreme law of the land, "any Thing in the Constitution or Laws of any State to the

13   Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  "It is basic to this constitutional

14   command that all conflicting state provisions be without effect."  *Maryland v.*

15   *Louisiana*, 451 U.S. 725, 746 (1981).

16       State law conflicts with federal law *either* where it is impossible to comply with

17   both *or* where (2) state law stands as an obstacle to the accomplishment and execution

18   of the full purposes and objectives of Congress as reflected in federal law.  *ONEOK,*

19   *Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015); *see Roberts v. N. Am. Van Lines, Inc.*,

20   394 F. Supp. 2d 1174, 1178 (N.D. Cal. 2004) (dismissing claims against motor carrier

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

under California law analogous to CPA and WLAD as preempted).

Here, deeming Greyhound's accession to CBP demands to be unlawful would prevent it from complying with orders that 8 U.S.C. § 1357 permits, and would obstruct the use of federal authority Congress provided. To the extent the duty Plaintiff seeks to impose on Greyhound thwarts federal objectives, it is preempted. *See Roberts*, 394 F. Supp. 2d at 1178. While the United States Supreme Court has limited the statute's reach in as-applied challenges, as explained below, the Supreme Court's limited holdings do not clarify the statute's application to businesses like Greyhound.

A federal statute like Section 1357 is presumed to be constitutional. *Heller v. Doe*, 509 U.S. 312, 320 (1993). The as-applied challenges to Section 1357 discussed below do not bear on facial unconstitutionality, which requires a showing that a statute is void in *all* applications. *United States v. Salerno*, 481 U.S. 739, 745 (1987). Thus, Section 1357's application to Greyhound is presumptively constitutional. Plaintiff's claims seek to impose a standard that (1) is impossible for Greyhound to comply without violating Section 1357 and (2) will thwart Section 1357's operation. Accordingly, Plaintiff's claims should be dismissed as preempted.

## B.    Section 1357 Is Presumptively Constitutional

No court has declared Section 1357 to be facially unconstitutional. Neither has any court declared Regulation Section 287.1 to be facially unconstitutional or even inconsistent with Section 1357. Therefore, the CBP's interpretation should be accorded

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

deference.  *See Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 468 U.S. 1227 (1984) (holding that courts must defer to an agency's interpretation of a statute it implements).

Over the years, however, several private motorists have successfully asserted as-applied challenges to Section 1357 under the Fourth Amendment, resulting in Supreme Court decisions limiting Section 1357's impact on them.  But, as explained below, these decisions do not apply to Greyhound.

a.    ***Almeida-Sanchez* And Its Progeny**

The first of these decisions is *Almeida-Sanchez v. United States*, 413 U.S. 266 (1973).  There, Border Patrol agents stopped the defendant's car on an east-west highway 25 miles from the border during a "roving patrol."  *Id.* at 267.  The agents searched the vehicle, found marijuana, and arrested the defendant.  *Id.* at 269.  The officers admitted that they had no reasonable suspicion to stop or search the vehicle, but claimed justification in Section 1357.  *Id.* at 268.  The Court disagreed.  It reasoned that Section 1357 did not permit the warrantless search of the defendant's car because he was not stopped at the border or its equivalent, where the Fourth Amendment permits warrantless searches.  *Id.* at 273.  Critically, however, the Court distinguished cases permitting warrantless searches of regulated businesses—which include Greyhound.  *Id.* at 271.  The Court observed that the "difference between those cases and this one is that businessmen engaged in such federally licensed and regulated enterprises accept the

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

1  burdens as well as the benefits of their trade, whereas the [defendant] here was not

2  engaged in any regulated or licensed business." *Id.*

3      The second of these decisions is *United States v. Brignoni-Ponce*, 422 U.S. 873,

4  876 (1975).  There, the Court did not resolve the open question of Section 1357's

5  application to pervasively-regulated businesses, like Greyhound.  Rather, according to

6  the Court, "[t]he only issue presented for decision [was] whether a roving patrol may

7  stop a vehicle in an area near the border and question its occupants when the only

8  ground for suspicion is that the occupants appear to be of Mexican ancestry." *Id.* at

9  876.  The Court held that a roving patrol could not do so, except perhaps at the border

10  or its functional equivalent.  *Id.* at 884.

11      The third of these decisions is *United States v. Ortiz*, 422 U.S. 891 (1975), which

12  the Court decided on the same day as *Brignoni-Ponce*.  Unlike the defendants in

13  *Almeida-Sanchez* and *Brignoni-Ponce*, the defendant in *Ortiz* was stopped at a fixed

14  checkpoint, not by a roving patrol.  *Id.* at 891–92.  Border Patrol agents searched his

15  vehicle and discovered three aliens in the trunk.  *Id.* at 892.  The agents justified their

16  search by pointing out facts that distinguished *Almeida-Sanchez*, namely, that their

17  discretion was limited by the location of the fixed checkpoint, and that a checkpoint

18  stop was less intrusive than a roving patrol stop.  *Id.* at 894.  The Court agreed that these

19  facts were relevant to the propriety of the *stop*, effectively validating Section 1357 in

20  those circumstances.  *Id.* at 895.  But the Court disagreed that these facts sufficiently

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

1    justified the more intrusive *search*. *Id.*

2    The fourth and final of these decisions is *United States v. Martinez-Fuerte*, 428

3    U.S. 543 (1976). There, the Court upheld the constitutionality of warrantless

4    immigration stops at checkpoints. Balancing the government's interest against a

5    motorist's right to privacy, the Court found the need to make checkpoint stops was

6    great, while the intrusion occasioned by the stop—and diversion of some motorists for

7    further questioning—was minimal. *Id.* at 557–58. Thus, "even if it be assumed that

8    such referrals are made largely on the basis of apparent Mexican ancestry, we perceive

9    no constitutional violation." *Id.* at 563. In *United States v. Hernandez*, 739 F.2d 484,

10    486-88 (9th Cir. 1984), cited above, the Ninth Circuit concluded that the reasoning of

11    *Martinez-Fuerte* applies with equal force to temporary as well as fixed checkpoints.

12    **b.    Additional Authority**

13    As is apparent, *Almeida-Sanchez* and its progeny resolved narrow questions

14    relating to Section 1357. They did not answer whether Section 1357 is consistent with

15    the Fourth Amendment in authorizing law enforcement officers, like CBP agents, to act

16    in accordance with its terms—that is, to board and search any vehicle for aliens, without

17    a warrant and without any warrant exception such as consent or reasonable suspicion,

18    within a reasonable distance, defined by Regulation Section 287.1 as 100 air miles,

19    from any external boundary of the United States.

20    Subsequent decisions, however, suggest an affirmative answer.

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

1      As noted, Greyhound buses may be stopped, boarded, and inspected by federal

2  agents at any time without a warrant including for purposes other than those related to

3  immigration.  *See* 49 U.S.C. § 31502; 49 C.F.R. 396.9.  Courts around the country have

4  found other industries subject to the FMCSA to be "pervasively regulated" and, as such,

5  presumptively subject to warrantless searches.  *See, e.g., United States v. Dominguez-*

6  *Prieto*, 923 F.2d 464, 468 (6th Cir. 1991) (common carriers in trucking industry).

7      Indeed, in *United States v. Angulo-Guerrero*, 328 F.3d 449, 450-51 (8th Cir.

8  2003), cited above, the Eighth Circuit founded that CBP agents who boarded a

9  Greyhound bus at a station in Ogallala, Nebraska—more than 500 miles from any

10  external boundary—acted consistently with the Constitution.  In a concurring opinion,

11  Chief Judge Loken explained that CBP had effectively made the bus station a temporary

12  checkpoint by treating it as such, and that the resulting intrusion was minimal.  *Id.* at

13  453.

14      These decisions place Greyhound and its passengers in a considerably different

15  position than private motorists and their passengers under the Fourth Amendment.

16  Greyhound has a diminished expectation of privacy in light of the history of regulation

17  and warrantless inspection.  Greyhound passengers also have a diminished expectation

18  of privacy as compared to private car passengers.  *See United States v. Wise*, 877 F.3d

19  209, 218 (5th Cir. 2018).  That said, whenever CBP agents board and search any

20  Greyhound bus, Greyhound passengers retain their rights to refuse questioning by

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

agents or to leave the bus under *United States v. Drayton*, 536 U.S. 194, 203–04 (2002).

Thus, Section 1357 has broader application to Greyhound and its passengers than to private motorists, unaffected by *Almeida-Sanchez* and its progeny.

Given the presumption of constitutionality enjoyed by federal statutes, Section 1357 is presumptively constitutional in authorizing CBP agents to board and search any vehicle, without a warrant and without any warrant exception such as consent or reasonable suspicion, within a reasonable distance, defined by Regulation Section 287.1 as 100 air miles, from any external boundary of the United States.

### C.   The Complaint Should Be Dismissed Without Leave to Amend Because CPA and WLAD Are in Conflict With Section 1357 and, As Such, Are Preempted

The Complaint should be dismissed without leave to amend because the CPA and WLAD are in conflict with Section 1357 and, as such, are preempted.

As noted, at its core, Plaintiff's Complaint is based on allegations to this effect: (1) to comply with the CPA and WLAD, Greyhound *must* bar CBP agents from (a) boarding and searching its buses at the Spokane Intermodal Center without a warrant or consent or reasonable suspicion, and (b) accessing its non-public property there in order to board and search its buses; but (2) Greyhound violated the CPA and WLAD because it did *not* bar CBP agents from doing so.  As so alleged, the CPA and WLAD are in conflict with Section 1357 and, as such, are preempted.

First, the CPA and WLAD conflict with Section 1357 because it is impossible for

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

1    Greyhound to comply both with the CPA and WLAD and with Section 1357.

2    As noted, Section 1357 authorizes CBP agents to board and search any vehicle,

3    without a warrant or consent or reasonable suspicion, within a reasonable distance,

4    defined by Regulation Section 287.1 as 100 air miles, from any external boundary of the

5    United States.  The Spokane Intermodal Center is within 100 air miles of the United

6    States-Canada border.  [ECF No. 1-1 at 25, footnote 7]. ¶ 24, footnote 7 (*citing to*

7    Spokane vs. The Border Patrol: How Immigration Agents Stake Out a City Bus Station,

8    *The Intercept* (December 10, 2019)*, https://theintercept.com/2019/12/10/border-patrol-*

9    *greyhound-buses-spokane/,* which stated "In response to public outcry, last year the

10    Spokane City Council passed an ordinance restricting the Border Patrol's access to the

11    bus depot. But the Border Patrol successfully argued that city officials couldn't kick the

12    agents out because Spokane is 97 miles — as the crow flies — from an international

13    border. That puts it within the 100-mile interior enforcement zone where Customs and

14    Border Protection, the Border Patrol's parent agency, claims heightened powers over

15    residents and travelers alike").  Because Section 1357 thus *explicitly authorizes* CBP

16    agents to board and search Greyhound's buses at the Spokane Intermodal Center

17    without a warrant or consent or reasonable suspicion, it *effectively prohibits* Greyhound

18    from barring them from doing so on the ground that they lack a warrant or consent or

19    reasonable suspicion.

20    As also noted, in conjunction with Section 1357, the Fourth Amendment allows

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

1  CBP agents to make stops at temporary checkpoints without a warrant or consent or

2  reasonable suspicion, even if the stop is largely based on ethnicity, and allows CBP to

3  effectively make a location a temporary checkpoint by treating it as such.  CBP has

4  effectively made the Spokane Intermodal Center a temporary checkpoint because, as

5  Plaintiff itself has alleged, that CBP has been treating the Spokane Intermodal Center as

6  a temporary checkpoint "[s]ince at least 2013."  [ECF No. 1-1 at 22]. ¶18.

7  ("transportation check operations").  Because the Fourth Amendment thus *explicitly*

8  *allows* CBP agents to make stops at the Spokane Intermodal Center without a warrant or

9  consent or reasonable suspicion, it *effectively prohibits* Greyhound from barring them

10  from accessing its non-public property there on the ground that they lack a warrant or

11  consent or reasonable suspicion.

12       Second, the CPA and WLAD conflict with Section 1357 because the CPA and

13  WLAD stand as an obstacle to the accomplishment and execution of the full purposes

14  and objectives of Congress as reflected in Section 1357.

15       As reflected in Section 1357, Congress's full purposes and objectives aim at the

16  enforcement of a uniform federal law governing aliens, which of necessity would be

17  threatened by "unilateral state action."  *Arizona v. United States*, 567 U.S. 387, 410

18  (2012).  The CPA and WLAD stand as an obstacle to the accomplishment and

19  execution these purposes and objectives.  That is because the CPA and WLAD hinder

20  CBP agents from exercising their authority under Section 1357 to act without a warrant

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

or consent or reasonable suspicion.  The CPA and WLAD hinder CBP agents from

exercising such authority by exposing private actors, like Greyhound, to liability if they

comply with Section 1357.

**D.    The Complaint Should Also be Dismissed Without Leave to Amend Because Plaintiff Failed To Join CBP as a Necessary Party and Failed to Plead Reasons for Not Joining It**

The Complaint should also be dismissed without leave to amend because Plaintiff

failed to join CBP as a necessary party and failed to plead reasons for not joining it.

Greyhound intends to go no further than to establish that Section 1357 is

presumed to be constitutional as applied to itself.  Greyhound has no interest in proving

that Section 1357 is indeed constitutional.  Indeed, Greyhound is on record calling for

Section 1357's amendment.

Here, CBP falls squarely within the definition of a person that Plaintiff was

required to join as a party and Plaintiff failed to plead reasons why it did not do so.

CBP has an interest in this action.  Plaintiff's requested injunction frustrates the exercise

of enforcement authority under Section 1357—a statute that has never been declared

unconstitutional.  Resolution of this controversy without CBP's joinder would subject

Greyhound to inconsistent obligations.  For example, even if Greyhound were

compelled by Plaintiff's requested injunction to bar CBP agents from (1) boarding and

searching its buses at the Spokane Intermodal Center without a warrant or consent or

reasonable suspicion, and (2) accessing its non-public property there in order to board

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

1  and search its buses, Greyhound would still be subject to demands by CBP agents to

2  allow them to do so pursuant to Section 1357 because CBP would not be bound by the

3  injunction.

4    In fairness, if the Complaint is not dismissed without leave to amend, CBP should

5  be joined.

6  **V.    CONCLUSION**

7    This should be clear:  Greyhound does not practice or condone discrimination

8  against any of its passengers of color, including particularly its Latino passengers.  All

9  that Greyhound does is comply, as it must, with Section 1357.  All Greyhound's

10  passengers—including its Latino passengers and its other passengers of color—enjoy

11  the benefits of its compliance as well as the burdens that compliance may entail.

12    It is inappropriate for Plaintiff to attempt to hold Greyhound accountable for the

13  conduct of CBP agents.  It is also unnecessary.  As this Court has itself recognized,

14  plaintiffs may hold CBP and its agents directly accountable for their own conduct.  *See*

15  *Segura v. United States*, 418 F. Supp. 3d 605, 610-13 (E.D. Wash. 2019).

16    For the reasons stated, Greyhound respectfully requests that this Court dismiss the

17  Complaint without leave to amend.  Should this Court conclude that dismissal of the

18  Complaint without leave to amend is unwarranted, Greyhound respectfully requests that

19  the Court compel the joinder of CBP to protect its own interest in this action and to prevent

20  exposing it to inconsistent obligations.

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

1    Respectfully submitted this 12th day of June, 2020.

2                        WITHERSPOON  KELLEY

3                        By:   s/ William M. Symmes
                         WILLIAM M. SYMMES, WSBA #24132
4                        STEVEN J. DIXSON, WSBA No. 38101
                         SAWYER R. MARGETT, WSBA No. 53223
5                        422 West Riverside Avenue, Suite 1100
                         Spokane, Washington 99201-0300
6                        Phone: 509 624-5265
                         Fax: (509) 458-2728
7                        Email:  wms@witherspoonkelley.com
                                sjd@witherspoonkelley.com
8                                srm@witherspoonkelley.com

9                        REED SMITH LLP

10                       JESSE L. MILLER, (*Pro Hac Vice Pending*)
                         JENNIFER R. FEARNOW, (*Pro Hac Vice*
11                       *Pending*)
                         101 Second Street, Suite 1800
12                       San Francisco, CA 94105-3659
                         Telephone: (415) 543-8700
13                       Facsimile:  (415) 391-8269
                         Email:  jessemiller@reedsmith.com
14                               jfearnow@reedsmith.com

15                       *Attorneys for Defendant Greyhound Lines, Inc.*

16

17

18

19

20

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on the 12th day of June, 2020:

3

1.    I electronically filed the foregoing with the Clerk of the Court using the

4

CM/ECF System, which may send notification of such filing to the following:

5

Lane Polozola at Lane.Polozola@atg.wa.gov
Yesica Hernandez at Yesica.Hernandez@atg.wa.gov

6

2.    I caused to be mailed by United States Postal Service the document to the

7

following at the address listed below:

8

Lane Polozola
Yesica Hernandez

9

Assistant Attorneys General
Office of the Attorney General

10

800 Fifth Avenue, Suite 2000
Seattle, WA 98104

11

3.    I electronically provided courtesy copies the foregoing to the following:

12

Lane Polozola at Lane.Polozola@atg.wa.gov
Yesica Hernandez at Yesica.Hernandez@atg.wa.gov

13

14

 s/ William M. Symmes
WILLIAM M. SYMMES, WSBA #24132

15

422 West Riverside Avenue, Suite 1100
Spokane, Washington 99201-0300

16

Phone: 509 624-5265
Email:  wms@witherspoonkelley.com

17

18

19

20

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265