1  ROBERT W. FERGUSON
   Attorney General
2  LANE M. POLOZOLA
   YESICA HERNANDEZ
3  Assistant Attorneys General
   Wing Luke Civil Rights Division
4  Office of the Attorney General
   800 Fifth Avenue, Suite 2000
5  Seattle, WA 98104
   (206) 474-7744
6

7

8
                **UNITED STATES DISTRICT COURT**
9               **EASTERN DISTRICT OF WASHINGTON**

10  STATE OF WASHINGTON,          NO. 2:20-cv-00209-SAB

11           Plaintiff,           **STATE OF
                                  WASHINGTON'S
12      v.                        OPPOSITION TO
                                  GREYHOUND'S MOTION
13  GREYHOUND LINES, INC.,        TO DISMISS**

14           Defendant.          AUGUST 20, 2020
                                 With Oral Argument:
15                               2:00 p.m., Spokane

16

17

18

19

20

21

22

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

1

## TABLE OF CONTENTS

2    I.    INTRODUCTION ................................................................. 1

3    II.    BACKGROUND .................................................................. 1

4          A.  Greyhound's Unfair, Deceptive, and Discriminatory Practices ... 1

5          B.  Procedural Background ..................................................... 5

6    III.    ARGUMENT .................................................................... 6

7          A.  Washington's Claims Are Not Conflict Preempted ..................... 6

8               1.  Greyhound's preemption argument relies on a
                    mischaracterization of Washington's Complaint, disputed
9                   facts, and a misinterpretation of settled law ......................... 8

10              2.  The CPA and WLAD do not conflict with federal law ........ 12

11         B.  Washington Is Not Required To Join CBP ................................ 15

12              1.  Traditional joinder rules do not apply in this enforcement
                    action ...................................................................... 15
13
                2.  CBP is not a necessary party ............................................ 16
14
                3.  Equity and good conscience require proceeding without
15                  CBP ...................................................................... 19

16   IV.    CONCLUSION ................................................................ 20

17

18

19

20

21

22

1             **TABLE OF AUTHORITIES**

2                <u>Cases</u>

3   *Almeida-Sanchez v. United States*,
      413 U.S. 266 (1973) ................................................................9, 10
4

  *Alto v. Black*,
5      738 F.3d 1111 (9th Cir. 2013)...........................................................17

6   *Arizona v. United States*,
      567 U.S. 387 (2012) ..........................................................................7
7

  *C.F.C. v. Miami-Dade County*,
8      349 F. Supp. 3d 1236 (S.D. Fla. 2018) ...........................................18

9   *Chen v. GEO Grp., Inc.*,
      287 F. Supp. 3d 1158 (W.D. Wash. 2017).........................................7
10

11   *Chicanos Por La Causa, Inc. v. Napolitano*,
      558 F.3d 856 (9th Cir. 2009)..............................................................7

12   *Conner v. Burford*,
      848 F.2d 1441 (9th Cir. 1988).........................................................15
13

  *Cordova v. Greyhound Lines, Inc.*,
14     No. RG18928028 (Cal. Super. Ct. June 20, 2019) .........................12

15   *E.E.O.C. v. Peabody W. Coal Co.*,
      400 F.3d 774 (9th Cir. 2005) .....................................................16, 19
16

  *Hickey v. Voxernet LLC*,
17     887 F. Supp. 2d 1125 (W.D. Wash. 2012).........................................7

18   *Kescoli v. Babbitt*,
      101 F.3d 1304 (9th Cir. 1996).........................................................16
19

  *Kroske v. U.S. Bank Corp.*,
20     432 F.3d 976 (9th Cir. 2005) *amended on denial of reh'g and reh'g en banc*,
    (Feb. 13, 2006) ...................................................................................7
21

  *McLaughlin v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*,
22     *Local Lodges 751-A & 751-C*, 847 F.2d 620 (9th Cir. 1988).........................19

STATE OF WASHINGTON'S       ii       ATTORNEY GENERAL OF WASHINGTON
OPPOSITION TO                         Civil Rights Division
GREYHOUND'S MOTION TO           800 Fifth Avenue, Suite 2000
DISMISS                               Seattle, WA  98104
                                    (206) 442-4492

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   498 F.3d 976 (9th Cir. 2007)..............................................................7

*Tonasket v. Sargent*,
   830 F. Supp. 2d 1078 (E.D. Wash. 2011) .........................................16

*Ubaldi v. SLM Corp.*,
   852 F. Supp. 2d 1190 (N.D. Cal. 2012) ..............................................7

*United States v. Bowen*,
   172 F.3d 682 (9th Cir. 1999)............................................................18

*United States v. California*,
   921 F.3d 865 (9th Cir. 2019), *cert. denied*, --- S. Ct. ---, 2020 WL 3146844
   (June 15, 2020)..........................................................................6, 14

*United States v. Wilmington*,
   131 F. App'x 336, 2005 WL 639121 (3rd Cir. Mar. 21, 2005) .....................11

*United States v. Wise*,
   877 F.3d 209 (5th Cir. 2017)............................................................11

*Washington v. GEO Grp., Inc.*,
   No. C17-5806-RJB, 2018 WL 1963792
   (W.D. Wash. Apr. 26, 2018) ...............................................16, 18, 19

*Washington v. Motel 6 Operating LP*,
   No. C18-337-MJP, 2018 WL 2277173 (W.D. Wash. May 18, 2018)............15

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
   135 F.3d 658 (9th Cir. 1998)..............................................................7

<u>Statutes</u>

8 U.S.C. § 1357(a)(3) ......................................................................8, 9

<u>Rules</u>

Fed. R. Civ. P. 19(a) .........................................................................17

Fed. R. Civ. P. 19(a)(1)(B)(ii) ...........................................................19

Fed. R. Civ. P. 19(b) .........................................................................19

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

iii

1    Fed. R. Civ. P. 19(b)(1) ....................................................................20

2    Fed. R. Civ. P. 19(b)(3) ....................................................................20

3    Fed. R. Civ. P. 19(b)(4) ....................................................................20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

STATE OF WASHINGTON'S          iv          ATTORNEY GENERAL OF WASHINGTON
OPPOSITION TO                                          Civil Rights Division
GREYHOUND'S MOTION TO                        800 Fifth Avenue, Suite 2000
DISMISS                                                   Seattle, WA  98104
                                                              (206) 442-4492

1

## I.    INTRODUCTION

2      Greyhound Lines, Inc. (Greyhound) is a for-profit company operating as a
3 common carrier in Washington. Despite its obligations to refrain from unfair,
4 deceptive, and discriminatory business practices under Washington law,
5 Greyhound has, for years, voluntarily consented to U.S. Customs and Border
6 Protection (CBP) agents boarding its buses and accessing its non-public property
7 at the Spokane Intermodal Center for the purpose of conducting warrantless and
8 suspicionless immigration enforcement sweeps. Greyhound fails to warn and
9 misleads its customers about this practice, the frequency and discriminatory
10 nature of the sweeps, and the likely impacts on passengers, particularly
11 passengers of color. Rather than take accountability for its actions, however,
12 Greyhound now moves to dismiss, arguing that Washington's longstanding,
13 generally applicable laws requiring fair business practices are conflict preempted,
14 and that CBP should have been sued to answer for Greyhound's misdeeds.
15 Because it relies on disputed facts and a misreading of governing law,
16 Greyhound's Motion, if considered,[1] should be denied.

17

## II.    BACKGROUND

18 **A.    Greyhound's Unfair, Deceptive, and Discriminatory Practices**

19      Greyhound is an intercity bus company operating as a common carrier in

20

21      [1] Because the Court lacks subject matter jurisdiction, *see* ECF No. 10,
22 Washington objects to consideration of Greyhound's Motion to Dismiss at all.

STATE OF WASHINGTON'S        1
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

Washington. Compl. ¶ 12.[2] Greyhound advertises and sells tickets at its bus terminals and other stops, over the phone, and via its website. *Id.* ¶¶ 13-14. Greyhound promises its passengers a "safe and reliable bus ride," "no discrimination with respect to prices or carriage," and further that it has "No Room for Discrimination" and is "not concerned about your race, your color, what you believe or where you're from. We just want to get you safely to your destination." *Id.* ¶ 17.

One of Greyhound's bus terminals is the Intermodal Center in downtown Spokane. *Id.* ¶ 14. Greyhound leases space at the Intermodal Center, including non-public "Employee Only" areas, for its operations. *Id.* All Greyhound routes that travel to or from the Intermodal Center are purely domestic routes. *Id.* ¶ 15. Notwithstanding the Intermodal Center's interior location 97 air miles, and more than 100 highway miles, from the border, CBP agents for years have routinely conducted warrantless and suspicionless immigration enforcement sweeps there that it calls "transportation check operations." *Id.* ¶ 18.

"Transportation check operations" are immigration enforcement sweeps where multiple CBP agents board and inspect common carriers, with the bus operator's permission, away from the U.S. border and away from formal checkpoints. *Id*. At the Intermodal Center, these enforcement sweeps have

---

[2] For the Court's convenience, a legible copy of Washington's as-filed Complaint has been submitted at ECF No. 11-1.

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

2

1   consistently involved multiple agents waiting in Greyhound's non-public

2   "Employee Only" areas, out of sight from passengers, and then boarding

3   Greyhound buses immediately before the bus departs. *Id*. ¶¶ 18-19. The armed

4   and uniformed agents, who are the only non-ticketed individuals allowed on

5   board, question passengers regarding their citizenship or immigration status, and

6   regularly subject passengers of color to more intense questioning than white

7   passengers, who may not be questioned at all. *Id.* ¶¶ 19-22. The sweeps have

8   occurred at least since 2013, and in recent years have taken place multiple times

9   per week and even multiple times per day. *Id.* ¶¶ 18, 21. They result in frequent

10   service disruptions, alarm, and delay, as well as the search, detention, and arrest

11   of passengers. *Id.* ¶¶ 2, 36, 47.

12        These enforcement sweeps are not conducted pursuant to judicial warrants

13   and are rarely conducted based on reasonable suspicion or probable cause to

14   believe a specific passenger has violated federal immigration law or any law at

15   all. *Id.* ¶¶ 18, 23-27. Instead, Greyhound's voluntary provision of consent

16   provides CBP with a legal basis to access Greyhound's non-public property and

17   buses. *Id*. CBP has publicly confirmed it "work[s] with consent from Greyhound

18   when we board their buses" at the Intermodal Center. *Id.* ¶ 24. CBP's training

19   materials and protocols governing "transportation check operations" likewise

20   confirm CBP's position that "[a]gents have no inherent authority to simply board

21   a common carrier without at least reasonable suspicion or consent." *Id.* ¶ 25

22   (quoting Ex. 4, *CBP Enforcement Law Course*, 519, U.S. Customs and Border

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

3

1    Protection (15th ed. 2012)). Instead, CBP's materials state that, when agents lack

2    at least reasonable suspicion, they may only board buses at non-checkpoint

3    locations with the permission of the bus operator. *Id.*, Ex. 4. A January 2020

4    memo from the then-U.S. Border Patrol Chief reiterates that point. *Id.* ¶ 26, Ex.

5    5. The memo directs that "where consent is denied and/or consensual encounters

6    are not possible without reasonable suspicion or probable cause, the agent should

7    terminate the encounter[.]" *Id.* It then states: "Absent reasonable suspicion or

8    probable cause, [CBP agents] do not have legal authority to board a bus without

9    the consent of the transportation company or one of its employees." *Id.*

10           Despite voluntarily subjecting its customers to frequent, harmful,

11    warrantless, and suspicionless sweeps at the Intermodal Center, Greyhound has

12    failed to warn them of expected  travel interferences, questioning, and seizures

13    that would likely result. *Id.* ¶¶ 28-42. Prior to late 2018, Greyhound provided no

14    notice or warnings to customers that it allowed CBP agents to conduct

15    enforcement sweeps on its buses, that the enforcement sweeps were likely to

16    occur, or that service disruptions and questioning by federal agents should be

17    expected. *Id.* ¶¶ 31-34. Greyhound likewise failed to notify customers that

18    warrantless and suspicionless questioning, search, detention, or arrest were

19    particularly likely for non-citizens, Latinos, and other passengers of color. *Id.*

20    ¶ 35. Greyhound added limited information to its website in late 2018 about

21    immigration enforcement sweeps, but it was hidden on a page that customers are

22    not presented with, or directed to, when purchasing a ticket, and Greyhound's

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1    notices remained absent and/or inadequate at its points of sale. *Id.* ¶¶ 37-42.

2    The Attorney General of Washington urged Greyhound to change its

3    practices for more than a year before filing suit. *Id.* ¶ 43. Greyhound refused to

4    address the Attorney General's concerns. *Id.* ¶ 44. In February 2020, however,

5    after receiving press coverage highlighting CBP's position that bus companies

6    are not required to permit CBP agents on their buses, Greyhound announced to

7    the media that it would stop consenting to CBP agents boarding its buses without

8    warrants. *Id.* ¶ 45 (citing Gene Johnson, *Greyhound to stop allowing immigration*

9    *checks on buses*, AP News (Feb. 21, 2020)). This is the same policy Greyhound

10    now tells the Court it is legally prohibited from adopting. *See id.* ¶ 46; ECF No.

11    8 at 12-20. Regardless of which of its changing positions is correct, Greyhound

12    still fails to adequately notify and warn its customers at points of sale regarding

13    travel impacts due to immigration enforcement sweeps. Compl. ¶¶ 46-47.

14    **B.    Procedural Background**

15    Washington filed this enforcement action in Spokane County Superior

16    Court. The Complaint pleads consumer protection and civil rights claims under

17    state law. Compl. ¶¶ 49-70. Washington challenges Greyhound's voluntary

18    business decisions to consent to CBP's enforcement sweeps, to deceive and fail

19    to warn its customers of known travel impacts and safety risks, and to hide the

20    material fact that Greyhound itself plays a central role in permitting the sweeps

21    to occur. *Id.* Greyhound removed the case and thereafter moved to dismiss.

22    ECF No. 8. Washington has moved to remand the case. ECF No. 10.

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

5

### III.   ARGUMENT

This is a consumer protection and civil rights enforcement action to remedy Greyhound's unfair business practices. To avoid accountability, Greyhound conjures up an alternative factual narrative: that it was not consenting to CBP's suspicionless and warrantless enforcement sweeps, but merely complying with federal orders pursuant to Greyhound's "legal duty." On that basis, Greyhound argues that Washington's claims are conflict preempted and that CBP should have been joined to answer for Greyhound's conduct. Because Greyhound's arguments rely on a mischaracterization of Washington's allegations, disputed facts, and a misreading of settled authority, there is no preemption. And because this is a case addressing Greyhound's conduct, complete relief is available against Greyhound without CBP. Greyhound's Motion to Dismiss should be denied.

### A.   Washington's Claims Are Not Conflict Preempted

Conflict preemption exists where state laws "conflict with federal law." *United States v. California*, 921 F.3d 865, 878 (9th Cir. 2019), *cert. denied*, --- S. Ct. ---, 2020 WL 3146844 (June 15, 2020) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). This includes cases where "'compliance with both federal and state regulations is a physical impossibility,' and those instances where the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 878-79 (quoting *Arizona*, 567 U.S. at 399) (further quotations omitted).

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

6

1    Mere "[t]ension between federal and state law is not enough[.]" *Shroyer v.*

2    *New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 988 (9th Cir. 2007) (quotation

3    omitted). Courts will instead find conflict preemption "only in 'those situations

4    where conflicts will necessarily arise.'" *Id.* (quoting *Goldstein v. California*, 412

5    U.S. 546, 554 (1973)); *see Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d

6    856, 863 (9th Cir. 2009). In conducting this analysis, courts "assume that 'the

7    historic police powers of the States' are not superseded 'unless that was the clear

8    and manifest purpose of Congress." *Arizona*, 567 U.S. at 400 (quoting *Rice v.*

9    *Sante Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). There is thus a strong

10    presumption against preemption, particularly for consumer protection and civil

11    rights laws. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 981-82 (9th Cir. 2005)

12    *amended on denial of reh'g and reh'g en banc*, (Feb. 13, 2006); *Hickey v.*

13    *Voxernet LLC*, 887 F. Supp. 2d 1125, 1130 (W.D. Wash. 2012).

14    For purposes of Greyhound's Motion, Washington's allegations—not

15    Greyhound's—must be accepted as true. *See Wyler Summit P'ship v. Turner*

16    *Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). That rule applies equally

17    where a motion to dismiss is based on alleged preemption. *See, e.g., Chen v. GEO*

18    *Grp., Inc.*, 287 F. Supp. 3d 1158, 1167 (W.D. Wash. 2017) (denying motion to

19    dismiss based on preemption where defendant relied on disputed facts); *Ubaldi*

20    *v. SLM Corp.*, 852 F. Supp. 2d 1190, 1202-03 (N.D. Cal. 2012) (same).

21    Here, Greyhound's preemption argument fails to overcome the strong

22    presumption against preemption for two reasons. First, it depends on a

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

7

1   characterization of the facts surrounding Greyhound's "consent" to the

2   immigration sweeps that is contrary to Washington's allegations and improper

3   on a motion to dismiss. Second, were Greyhound to follow Washington law, there

4   would be no actual conflict with federal law or Congressional objectives.

5         **1.**    **Greyhound's preemption argument relies on a mischaracterization of Washington's Complaint, disputed facts,**

6                 **and a misinterpretation of settled law**

7        Greyhound's Motion repeatedly characterizes Washington's Complaint as

8   seeking an order requiring Greyhound to "bar" CBP from its buses. ECF No. 8

9   at 2, 7, 9, 17-20. Greyhound argues that it cannot do that consistent with federal

10  law, and offers disputed facts regarding an alleged closed-door, 2018 meeting as

11  "proof" that Greyhound's hands are tied and Washington law is preempted.

12  *Id.* at 5-6, 11-20. Greyhound's legal and factual arguments fall far short of

13  demonstrating preemption of longstanding Washington law.

14       First off, Greyhound's legal argument is largely a red herring, ignoring that

15  Washington's allegations do not challenge sweeps conducted pursuant to

16  8 U.S.C. § 1357(a)(3). The crux of Washington's Complaint is not that CBP

17  overstepped in asking to board buses, but that Greyhound voluntarily consented

18  to CBP's warrantless and suspicionless sweeps, and deceived, misled, and

19  discriminated against its customers by failing to warn them about the impacts and

20  safety risks of traveling on Greyhound buses. Compl. ¶¶ 49-70.

21       The plain language of § 1357(a)(3) makes clear the distinction between

22  Washington's allegations and Greyhound's attempt to hide behind a "legal duty"

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1    pursuant to § 1357(a)(3). That provision provides that immigration officers may

2    "board and search for aliens . . . [on] any railway car, aircraft, conveyance, or

3    vehicle" within a "reasonable distance from any external boundary of the United

4    States." 8 U.S.C. § 1357(a)(3). It does not address whether a private entity is

5    required to consent to warrantless and suspicionless entry onto its property. *Id.*

6    And, of course, the statute nowhere dictates what notices a bus company must

7    provide to customers about its business choices and known risks, or otherwise

8    address advertising and marketing practices. *See id.*

9        Moreover, § 1357 does not exist in a vacuum. The authority it provides to

10    government officials is constrained by Supreme Court precedent and the Fourth

11    Amendment, and it does not authorize the enforcement sweeps occurring at non-

12    checkpoint locations like the Intermodal Center—as recognized in CBP's own

13    materials. In particular, the Supreme Court has long held that § 1357(a)(3) does

14    not grant CBP free reign to seize and search vehicles within the United States,

15    even when they are within 100 air miles from the border. *Almeida-Sanchez v.*

16    *United States*, 413 U.S. 266, 272-73 (1973). Instead, the Fourth Amendment

17    limits CBP's authority to conduct warrantless searches under that provision to

18    searches at a border or the "functional equivalent" of a border. *Id*. Outside that

19    limited exception, the Fourth Amendment permits a search or seizure only where

20    it is based on a warrant, probable cause, reasonable suspicion, or consent. *See id*.

21        Nor are "regulated businesses" exempt from *Almeida-Sanchez*'s holding,

22    as Greyhound suggests. ECF No. 8 at 13-14. To the contrary, the Court held that

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

9

1   CBP's warrantless and suspicionless immigration searches were not rendered

2   constitutional based on cases permitting warrantless administrative inspections

3   of regulated entities because those cases all involved specific inspections that

4   were "within the proper scope of official scrutiny" of the businesses subjected to

5   such inspections. *Almeida-Sanchez*, 413 U.S. at 270-72. Here, of course, CBP

6   agents are not tasked with enforcing the Federal Motor Carrier Safety

7   Administration's safety inspections—they are acting under an entirely separate

8   regime that is squarely governed by the Fourth Amendment and its

9   well-established rule that searches and seizures can only be undertaken with a

10  warrant, probable cause, reasonable suspicion, or consent. *See id.*

11      Greyhound's "consent" is therefore key. Washington's claims are based

12  on Greyhound's voluntary conduct at the Intermodal Center, a bus terminal in

13  downtown Spokane where it offers purely domestic routes, and Greyhound's

14  related business practices in advertising and marketing bus services. Because the

15  Intermodal Center is not a formal checkpoint—whether temporary or

16  permanent—and it is not located on or near an international border, searches there

17  are not conducted pursuant to § 1357(a)(3). *See* Compl. ¶¶ 18, 23-27. To the

18  contrary, Washington alleges that Greyhound provides permission to CBP to

19  undertake this activity, *id.*, thereby relieving CBP of any need to obtain a warrant,

20  have reasonable suspicion, or even attempt to invoke § 1357 at all. Washington

21  is not speculating: CBP publicly confirmed that it "works with consent from

22  Greyhound" when it boards buses at the Intermodal Center. *Id.* ¶ 24.

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

This fact of Greyhound's consent as an independent basis for the sweeps is consistent with (1) CBP's own protocols regarding enforcement sweeps like those at the Intermodal Center, and (2) Greyhound's public actions (which contradict the position Greyhound now asserts).[3] On the former, as Washington alleges, CBP's protocols establish that "[a]gents have no inherent authority to simply board a common carrier without at least reasonable suspicion or consent." *Id.* ¶ 25, Ex. 4. The same materials acknowledge that "[w]hen the transportation check occurs on a bus or train, the agent will have to demonstrate that he gained access to the bus or train with the consent of its owner or employee[,]" *id.*, and direct agents to "terminate the encounter" if the bus company does not provide consent and there is no warrant or reasonable suspicion to justify boarding. *Id.* ¶ 26, Ex. 4, 5. On the latter point, Greyhound's actions show that no conflict or

---

[3] Ample case law likewise recognizes Greyhound's longstanding corporate policy of consenting to warrantless searches by law enforcement on its buses. *See*, *e.g.*, *United States v. Wise*, 877 F.3d 209, 217-18 (5th Cir. 2017) (reversing order suppressing evidence obtained during bus search where Greyhound driver voluntarily consented to allow law enforcement on board); *United States v. Wilmington*, 131 F. App'x 336, 2005 WL 639121, at *1-2 (3rd Cir. Mar. 21, 2005) (affirming denial of suppression motion where Greyhound driver consented to law enforcement boarding bus "consistent with Greyhound's policy that drivers cooperate with law enforcement when possible").

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

11

1  obstacle would arise if it declined to voluntarily permit law enforcement on its

2  buses to undertake warrantless and suspicionless enforcement sweeps. In

3  February 2020, Greyhound told the public that it would do just that—the act it

4  now says it will not and cannot do. *Id.* ¶ 45.

5      Ultimately, Greyhound attempts to dispute whether it consented to the

6  enforcement sweeps,[4] ignoring that it communicated to CBP in April 2018 that

7  Greyhound "is committed to supporting CBP enforcement actions (inspections)."

8  *Id.* ¶ 30, Ex. 9. Instead of addressing its own consent head-on, it seeks to avoid

9  the issue by arguing, based on its disputed factual narrative, that § 1357 is so

10  broad that Greyhound's consent does not matter. Supreme Court case law and

11  CBP's own protocols are to the contrary, and undercut Greyhound's assertions

12  about what federal law requires and the factual nature of enforcement sweeps at

13  the Intermodal Center. Greyhound's Motion should be denied on this basis alone.

14      **2.    The CPA and WLAD do not conflict with federal law**

15      Even if the sweeps at the Intermodal Center *did* occur pursuant to

16  § 1357(a)(3), Greyhound cannot overcome the strong presumption against

17  preemption in this case. Greyhound's compliance with its duties under the CPA

---

19      [4] When Greyhound made the same § 1357 preemption argument, based on

20  a similar mischaracterization of facts, in a similar case in California, the state

21  court rejected it. *See* Order, *Cordova v. Greyhound Lines, Inc.*, No. RG18928028,

22  at 1-2 (Cal. Super. Ct. June 20, 2019) (attached hereto as Appendix 1).

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

12

1    and WLAD do not make it impossible for it to comply with, or pose an obstacle

2    to, any federal law.

3        The crux of Washington's CPA claims, beyond Greyhound's voluntary

4    provision of consent to CBP, is that Greyhound engaged in unfair and deceptive

5    practices by failing to warn and misleading its customers about the expected

6    occurrence of enforcement sweeps on its buses, Greyhound's role in permitting

7    those sweeps, and the likelihood of travel interference and risks posed by those

8    sweeps. *See* Compl. ¶¶ 53-64. Violations of the CPA and WLAD are also alleged

9    for Greyhound's voluntary decision to grant CBP agents consent to board its

10    buses, despite knowing and failing to warn its customers that such activity

11    subjected its Latino and other passengers of color to different, and much worse,

12    treatment than white passengers. *Id*. ¶¶ 49-52, 65-70.

13        Nowhere does Greyhound demonstrate how complying with its obligations

14    to deal fairly with its customers under the CPA or WLAD, as set forth in

15    Washington's Complaint, prevents it from complying with any duty it has under

16    federal law. Nor can it. Greyhound can warn its customers of the expected

17    occurrence of, and risks posed by, CBP's enforcement sweeps—regardless of

18    CBP's basis for the searches—without conflicting with any federal law.

19    Greyhound can refrain, and should have refrained, from making false and

20    deceptive statements regarding the role it played, and/or will play, in granting or

21    denying CBP permission to board its buses. Finally, Greyhound can comply with

22    its obligation to not discriminate by warning its customers about the known

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1    likelihood of sweeps and their impacts on passengers of color. It is not impossible

2    for Greyhound to comply with state and federal law at the same time.

3            Nor would Greyhound's compliance with Washington law pose an

4    "obstacle to the accomplishment and execution of the full purposes and

5    objectives of Congress." *California*, 921 F.3d at 879. Greyhound does not

6    address this point in detail or identify § 1357's purposes and objectives; it merely

7    argues that the federal law's unidentified purposes and objectives "aim" for

8    uniformity in the enforcement of laws that govern undocumented persons.

9    *See* ECF No. 8 at 19. This is insufficient. Washington's claims do not impose

10   limitations on CBP's authority or its ability to uniformly enforce immigration

11   law under § 1357 or otherwise, and § 1357 itself imposes no obligation on

12   Greyhound, as a private actor, to voluntarily consent to CBP's requests or to

13   advertise its service in any particular way. Washington's claims instead seek to

14   ensure that Greyhound complies with state law governing unfair and deceptive

15   practices and prohibiting discrimination, when it decides whether to voluntarily

16   grant CBP consent to board its buses and how to advertise and market its services.

17           Courts facing the same type of generalized "conflict preemption"

18   arguments that Greyhound presents—unsupported by an actual conflict or an

19   obstacle to the identified purposes of the federal law at issue—have rejected

20   them. *See*, *e.g.*, *California*, 921 F.3d at 886-87 (rejecting conflict preemption

21   challenge to state law requiring judicial warrant or probable cause before

22   transferring an individual to immigration authorities where federal law did not

STATE OF WASHINGTON'S                    14          ATTORNEY GENERAL OF WASHINGTON
OPPOSITION TO                                                 Civil Rights Division
GREYHOUND'S MOTION TO                                    800 Fifth Avenue, Suite 2000
DISMISS                                                      Seattle, WA  98104
                                                              (206) 442-4492

1    impose obligations on state or compel its cooperation; also recognizing

2    distinction between declining to cooperate and improperly obstructing federal

3    immigration enforcement); *Washington v. Motel 6 Operating LP*, No.

4    C18-337-MJP, 2018 WL 2277173, at *3 (W.D. Wash. May 18, 2018) (rejecting

5    argument that CPA and WLAD claims were conflict preempted because federal

6    law did not require Motel 6 to voluntarily turn over guest information to ICE).

7    This Court should likewise reject Greyhound's vague claim of a federal-state

8    conflict and deny its Motion under Rule 12(b)(6).

9    **B.    Washington Is Not Required To Join CBP**

10    Greyhound's "failure to join" argument under Rule 12(b)(7) likewise fails.

11    The public rights exception renders unnecessary any need to consider Rule 19's

12    joinder requirements, and even if the Court engages in the traditional joinder

13    analysis, Greyhound has failed to demonstrate that CBP is either necessary or

14    indispensable. This case should proceed without CBP.

15    **1.    Traditional joinder rules do not apply in this enforcement action**

16    The "public rights exception" renders unnecessary any need to consider

17    Greyhound's joinder argument. *See Conner v. Burford*, 848 F.2d 1441, 1459

18    (9th Cir. 1988) (citing *Nat'l Licorice Co. v. Nat'l Labor Relations Bd.*, 309 U.S.

19    350, 363 (1940)) ("In a proceeding . . . narrowly restricted to the protection and

20    enforcement of public rights, there is little scope or need for the traditional rules

21    governing the joinder of parties in litigation determining private rights."). The

22    exception applies where, as here, the litigation transcends the private interests of

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

15

1    the litigants and seeks to vindicate a public right, and the litigation will not

2    destroy the legal entitlements of the absent parties. *Kescoli v. Babbitt*, 101 F.3d

3    1304, 1311 (9th Cir. 1996). This action, brought pursuant to the Attorney

4    General's authority to vindicate the public interest and enforce state laws

5    prohibiting unfair, deceptive, and discriminatory business practices, transcends

6    the private interests of Greyhound and CBP, and will not destroy any of CBP's

7    legal entitlements for the reasons explained above. *See Washington v. GEO Grp.,*

8    *Inc.*, No. C17-5806-RJB, 2018 WL 1963792, at *3-4 (W.D. Wash. Apr. 26, 2018)

9    (holding public rights exception applicable in state enforcement action).

10    ### 2.    CBP is not a necessary party

11    Even if considered, Greyhound's joinder argument fails. Federal Rule of

12    Civil Procedure 19 "governs compulsory joinder[.]" *E.E.O.C. v. Peabody W.*

13    *Coal Co.*, 400 F.3d 774, 778 (9th Cir. 2005). Under that rule's framework, the

14    moving defendant must clear three barriers before dismissal is warranted: (1) that

15    the nonparty is "necessary" under Rule 19(a); (2) that their joinder is feasible;

16    and (3) that the non-party is "indispensable" under Rule 19(b). *Id.* at 779-80; *see*

17    *Tonasket v. Sargent*, 830 F. Supp. 2d 1078, 1081 (E.D. Wash. 2011) ("The party

18    moving under Rule 12(b)(7) bear[s] the burden in producing evidence in support

19    of the motion.") (internal quotation marks omitted).

20    A non-party is "necessary" under Rule 19(a) only if: (1) in its absence,

21    complete relief cannot be accorded among the existing parties; or (2) the nonparty

22    has a legally protected interest in the action and (a) resolving the action without

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

16

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 442-4492

1      the nonparty will "impair or impede its ability to protect that interest," or (b)

2      resolution of the claim without the nonparty will "leave an existing party subject

3      to a substantial risk of incurring double, multiple, or otherwise inconsistent

4      obligations because of the interest." *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir.

5      2013); Fed. R. Civ. P. 19(a). Greyhound cannot establish that CBP is a

6      "necessary" party under any of these bases.

7              First, Washington can obtain complete relief for its claims without CBP.

8      This enforcement action only seeks relief to remedy Greyhound's conduct—

9      specifically its treatment of its customers in this state. Washington does not seek

10     any relief from CBP, and CBP's absence in no way precludes complete relief

11     between Washington and Greyhound. *See Alto*, 738 F.3d at 1126-27 (complete

12     relief available between existing parties where injury complained of was caused

13     by the existing defendant and relief requested would afford plaintiff the complete

14     relief sought without the need to bind the absent party).

15             To avoid this conclusion, Greyhound relies on a generalized

16     characterization of what an injunction in this case would require and ignores

17     Washington's detailed allegations. *See* ECF No. 8 at 20. But the Complaint is

18     clear: among other relief sought from Greyhound, such as civil penalties and

19     restitution to Washington consumers, Compl. ¶¶ 71-73, 75-77, Washington seeks

20     to enjoin Greyhound from continuing to engage in unfair, deceptive, and

21     discriminatory practices. *Id*. ¶ 74. Nowhere does Washington seek relief that

22     involves or will bind CBP, and Greyhound nowhere explains why all relief

STATE OF WASHINGTON'S                17              ATTORNEY GENERAL OF WASHINGTON
OPPOSITION TO                                                       Civil Rights Division
GREYHOUND'S MOTION TO                                        800 Fifth Avenue, Suite 2000
DISMISS                                                              Seattle, WA  98104
                                                                        (206) 442-4492

1    Washington seeks cannot (and should not) be obtained from Greyhound.

2        Second, that CBP has not claimed a legally protected interest in this lawsuit

3    is dispositive of Greyhound's argument. *See United States v. Bowen*, 172 F.3d

4    682, 689 (9th Cir. 1999) (joinder is "contingent . . . upon an initial requirement

5    that the absent party claim a legally protected interest relating to the subject

6    matter of the action.") (quoting *Northrop Corp. v. McDonnell Douglas Corp.*,

7    705 F.2d 1030, 1043 (9th Cir. 1983)). Greyhound offers no more than a

8    conclusion that "CBP has an interest in this action" and refers back to § 1357.

9    ECF No. 8 at 20. That is not sufficient. *See*, *e.g.*, *GEO Grp.*, 2018 WL 1963792,

10    at *3-4 (denying motion to dismiss where ICE did not assert interest and

11    defendant only speculated about future events).

12        There is an additional flaw in Greyhound's position: even if asserted, CBP

13    has no legally protected interest in compelling Greyhound, a private party, to

14    voluntarily consent to warrantless and suspicionless enforcement sweeps, to

15    require Greyhound to mislead and fail to warn passengers about known travel

16    impacts and risks, or to violate state anti-discrimination laws. *See C.F.C. v.*

17    *Miami-Dade County*, 349 F. Supp. 3d 1236, 1268-69 (S.D. Fla. 2018) (denying

18    motion to dismiss for failure to join federal government where plaintiff

19    challenged county defendant's voluntary decision to honor immigration detainer

20    because federal government had no legally protectable interest in compelling

21    county to do so). To the contrary, CBP itself recognizes that common carriers

22    like Greyhound are not required to allow agents on their buses. Compl. ¶¶ 25-27.

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

18

1       Third, adjudicating Washington's claims against Greyhound will not

2   "impair or impede [CBP]'s ability to protect a claimed legal interest" or "leave

3   [Greyhound] subject to a substantial risk of incurring double, multiple, or

4   otherwise inconsistent obligations because of the interest." *Alto*, 738 F.3d at

5   1126-27 (internal quotations omitted). There is no legally protected interest, so

6   there is no need to evaluate these bases further. Fed. R. Civ. P. 19(a)(1)(B)(ii).

7   Greyhound nonetheless asserts it will be subject to "inconsistent obligations"

8   based on a hypothetical injunction requiring it to "bar" CBP agents from ever

9   boarding its buses. ECF No. 8 at 20. "Speculation about the occurrence of a future

10  event[,]" however, "ordinarily does not render all parties potentially affected by

11  that future event necessary or indispensable parties under Rule 19." *McLaughlin*

12  *v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Local Lodges 751-*

13  *A & 751-C*, 847 F.2d 620, 621 (9th Cir. 1988) (quoting *Northrop*, 705 F.2d at

14  1046); *GEO Grp.*, 2018 WL 1963792, at *3-4. Speculation and a

15  mischaracterization of Washington's requested relief is all that Greyhound offers.

16      **3.    Equity and good conscience require proceeding without CBP**

17      Even if CBP were a "necessary" party, this case should proceed without it.

18  The Court must determine whether, in equity and good conscience, the action

19  should proceed among the existing parties or should be dismissed where a

20  nonparty is absent and cannot be joined. *Peabody*, 610 F.3d at 1077. Courts

21  consider numerous factors to make this determination, each of which supports

22  the conclusion that CBP is not indispensable here. *See* Fed. R. Civ. P. 19(b).

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

19

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1   A judgment rendered in CBP's absence would not "prejudice" CBP or

2   Greyhound for the same reasons CBP is not a necessary party. *See* Fed. R. Civ.

3   P. 19(b)(1). Moreover, because Greyhound has not shown prejudice under Rule

4   19(b)(1), there is no need to speculate about modifications to the requested

5   judgment under Rule 19(b)(2). But even if additional analysis were required, the

6   relief Washington seeks is equitable in nature, and the Court can fashion relief to

7   avoid any potential prejudice, if found, to CBP's interests. Further, because the

8   relief sought in this case can be accorded between the existing parties, a judgment

9   adjudicating Washington's claims against Greyhound, even in CBP's absence,

10  will be adequate to enforce Washington's consumer protection and civil rights

11  laws with respect to Greyhound's corporate conduct. Fed. R. Civ. P. 19(b)(3).

12  Finally, Washington would have no way to remedy Greyhound's unfair and

13  discriminatory conduct, which only Greyhound can control, if this case is

14  dismissed. Fed. R. Civ. P. 19(b)(4). That would not be a result consistent with

15  equity and good conscience.

16  ### IV.    CONCLUSION

17  For the foregoing reasons, Washington respectfully requests that, if the

18  Court considers Greyhound's Motion to Dismiss, it be denied in its entirety. A

19  proposed order accompanies this filing.

20

21

22

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS

20

1    DATED this 2nd day of July, 2020.

2

3                          Respectfully submitted,

4                          ROBERT W. FERGUSON
                           Attorney General of Washington
5

6                          *s/ Lane M. Polozola*
                           LANE M. POLOZOLA, WSBA No. 50138
7                          YESICA HERNANDEZ, WSBA No. 48399
                           Assistant Attorneys General
8                          Wing Luke Civil Rights Division
                           Office of the Attorney General
9                          800 Fifth Avenue, Suite 2000
                           Seattle, WA 98104
10                         (206) 474-7744
                           Lane.Polozola@atg.wa.gov
11                         Yesica.Hernandez@atg.wa.

12

13

14

15

16

17

18

19

20

21

22

STATE OF WASHINGTON'S                21        ATTORNEY GENERAL OF WASHINGTON
OPPOSITION TO                                          Civil Rights Division
GREYHOUND'S MOTION TO                             800 Fifth Avenue, Suite 2000
                                                       Seattle, WA  98104
DISMISS                                                  (206) 442-4492

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that the foregoing document was electronically filed with

3   the United States District Court using the CM/ECF system. I certify that all

4   participants in the case are registered CM/ECF users and that service will be

5   accomplished by the CM/ECF system.

6      Dated this 2nd day of July 2020, in Seattle, Washington.

7

8   Caitilin Hall
    Legal Assistant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

STATE OF WASHINGTON'S
OPPOSITION TO
GREYHOUND'S MOTION TO
DISMISS