WILLIAM M. SYMMES, WSBA No. 24132        Hon. Stanley A. Bastian
STEVEN J. DIXSON, WSBA No. 38101
WITHERSPOON • KELLEY
422 W. Riverside Ave., Suite 1100
Spokane, WA  99201
Telephone:  (509) 624-5265
Facsimile:  (509) 458-2728
Email:  wms@witherspoonkelley.com
          sjd@witherspoonkelley.com

JESSE L. MILLER (*Pro Hac Vice*)
JENNIFER R. FEARNOW (*Pro Hac Vice*)
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: (415) 543-8700
Facsimile: (415) 391-8269
Email:  jessemiller@reedsmith.com
          jfearnow@reedsmith.com

Attorneys for Defendant Greyhound Lines, Inc.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Plaintiff,<br><br>vs.<br><br>GREYHOUND LINES, INC.,<br><br>          Defendant. | Case No. 20-CV-209-SAB<br><br>DEFENDANT GREYHOUND LINES, INC.'S OPPOSITION TO MOTION TO REMAND<br><br>August 20, 2020 (Spokane)<br>With Oral Argument: 2:00 p.m. |

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 1



WITHERSPOON • KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100        Phone: 509.**624.5265**
Spokane, Washington 99201-0300           Fax: 509.**458.2728**

## I. INTRODUCTION

Plaintiff filed a Complaint against Greyhound in Washington state court. Greyhound then filed in this Court a Notice of Removal of the ensuing action based on the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1). Plaintiff has now filed a Motion to Remand the action to state court, claiming that it was improperly removed, and requesting an award of fees and costs if it were to prevail.

As Greyhound will show, this Court should deny Plaintiff's Motion to Remand with its request for fees and costs.

## II. THE BACKGROUND TO THE MOTION TO REMAND

### A. The Legal Background[1]

The Fourth Amendment to the United States Constitution recognizes the "right of the people to be secure … against unreasonable searches and seizures …."

Section 1357 of Title 8 of the United States Codes ("Section 1357") provides, in pertinent part, that CBP agents "shall have power without warrant," "within a reasonable distance from any external boundary of the United States," i.e., with 100 air miles, 8 C.F.R. § 287.1(a)(1), "to board and search for aliens … any … vehicle" 8 U.S.C. § 1357(a)(3).

Section 1357 thus authorizes CBP agents to board and search any vehicle within 100 air miles from any external boundary of the United States without any need to

---

[1]    *See* ECF No. 8 at 3-4, 12-17.

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 2

**WK** WITHERSPOON · KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

comply with a warrant requirement—and hence without any need to establish any exception for compliance with any warrant requirement, such as probable cause, reasonable suspicion, or consent.

In authorizing CBP agents to board and search any vehicle within 100 air miles from any external boundary of the United States without a warrant or a warrant-exception, Section 1357 prohibits any person from barring them from boarding or searching the vehicle in the absence of a warrant or warrant-exception.

On its face, Section 1357 is presumptively constitutional and hence presumptively consistent with the Fourth Amendment.

The Fourth Amendment allows CBP agents to make stops at checkpoints, even if the stop is based on ethnicity. That is true if the checkpoint is fixed. That is also true if the checkpoint is temporary, as where CBP agents treat a location as such.

**B.    The Factual Background**

In its Complaint, Plaintiff alleges that Greyhound engaged in unlawful conduct, i.e., unfair, deceptive, and discriminatory practices, under the CPA and WLAD because it (1) allowed CBP agents to engage in "unlawful" conduct by boarding and searching its buses at the Spokane Intermodal Center, and (2) failed to warn its passengers of the agents' "unlawful" conduct and of the consequences of such conduct. ECF No. 1-1 at 18-19, 33-36. In other words, Plaintiff alleges that Greyhound engaged in unlawful conduct under the CPA and WLAD because CBP agents engaged in "unlawful"

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 3



WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

conduct of their own. *Id.* By alleging that Greyhound engaged in unlawful conduct under the CPA and WLAD because it allowed CBP agents to "unlawfully" board and search its buses, Plaintiff effectively alleges the CPA and WLAD require Greyhound to bar CBP agents from doing so. *Id.*

But in so alleging, Plaintiff either suppresses or ignores facts that support the lawfulness of the conduct of CBP agents and hence the lawfulness of the conduct of Greyhound itself. One of these facts is that the applicable law includes not only the CPA and WLAD, which Plaintiff cites throughout its Complaint, but also Section 1357, which it cites nowhere. The other facts are that the Spokane Intermodal Center is a temporary checkpoint, which Plaintiff would later effectively admit, *see* ECF No. 10 at 6-7, and is less than 100 air miles from the United States-Canada border, which Plaintiff would later expressly admit, *id*. at 6.

These facts are crucial, and it is obvious why Plaintiff either suppresses or ignores them. In *United States v. Gabriel*, 405 F. Supp. 2d 50, 56-62 (D. Maine 2005), the court held the establishment and operation of a temporary checkpoint by CBP agents pursuant to Section 1357 is consistent with the Fourth Amendment when the location in question is within 100 air miles from the United States-Canada border. There, the location was near Bangor, Maine, which was presumably of concern to CBP because it had a population of about 33,000, https://worldpopulationreview.com/us-cities/bangor-me-population (as of July 18, 2020). Here, the location is Spokane, which is presumably of greater concern

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 4



WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

to CBP because it has an almost-seven-times-greater population of about 223,000, https://worldpopulationreview.com/us-cities/spokane-wa-population (as of July 18, 2020).

## C.    The Procedural Background

On April 13, 2020, Plaintiff filed its Complaint in the Superior Court of Washington for the County of Spokane (Case No. 20-2-01236-32).  ECF No. 1-1.

On June 5, 2020, Greyhound filed its Notice of Removal in this Court under the Federal Officer Removal Statute.  ECF No. 1.

On July 2, 2020, Plaintiff filed its Motion to Remand, claiming that Greyhound's removal was improper, with a request for an award of fees and costs if it were to prevail.  ECF No. 10.

Greyhound now files this Opposition to the Motion to Remand, showing that its removal was proper.

## III.    ARGUMENT

## A.    The Legal Standard

The legal standard that this Court must apply in ruling on Plaintiff's Motion to Remand is settled.

When a plaintiff moves a federal district court to remand an action to state court on the ground the defendant improperly removed the action to the federal district court under the Federal Officer Removal Statute, the federal district court must deny the

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 5



WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

motion if the plaintiff fails to show the defendant's removal was indeed improper. *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1243-51 (9th Cir. 2017).

The Federal Officer Removal Statute provides, in pertinent part, that an "action … that is commenced in a State court … may be removed" to federal district court if the action "is against or directed to" "any person acting under" "any officer … of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

The purpose of the Federal Officer Removal Statute is "to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his [or her] duties." *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981). The right of removal under the statute is "absolute for conduct performed under color of federal office," and the "policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of [the statute].' " *Id.* at 242.

Under the Federal Officer Removal Statute as it stood before 2011 in its prior form, which allowed removal "for" an act under color of federal office, a defendant whose removal of an action was challenged by motion to remand bore the burden of showing that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and [the] plaintiff's claims; and (c) it can assert a 'colorable federal defense.' " *Durham v.*

**WK** **WITHERSPOON·KELLEY**
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100       Phone: 509.**624.5265**
Spokane, Washington 99201-0300           Fax: 509.**458.2728**

*Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

But under the Federal Office Removal Statute as amended in 2011 into its present form, which now allows removal "for *or relating to*" an act under color of federal office, a defendant continues to bear the burden of showing that it is a "person" and that it can assert a colorable federal defense, but now it need only show some "connection" or "association," not a causal nexus, between its actions and the plaintiff's claims. *Latiolais v. Huntington Ingalls, Incorporated*, 951 F.3d 286, 291-96 (5th Cir. 2020) (en banc); *accord Sawyer v. Foster Wheeler, L.L.C.*, 860 F.3d 249, 258 (4th Cir. 2017); *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 & n.8 (11th Cir. 2017); *In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 457, 470–71 (3d Cir. 2015).[2]

## B.    The Application of the Legal Standard

In applying this settled legal standard in ruling on Plaintiff's Motion to Remand, this Court should "pay heed" to the "duty" implicit in the standard, which is to

---

[2]    Although in *Goncalves* the Ninth Circuit stated that a defendant must show a causal nexus, 865 F.3d at 1244, it revealed in its analysis that a showing of a connection or association was sufficient, *see id.* at 1244-45. *See Latiolais*, 951 F.3d at 295 n.8 (citing *Goncalves* and identifying the Ninth Circuit as one of the circuits that "interpret the 'causal nexus' … requirement … expansively").

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 7

" 'interpret' " the Federal Officer Removal Statute " 'broadly in favor of removal.' " *Goncalves*, 865 F.3d at 1244.  So interpreting the statute, this Court should deny the motion.

### 1.    Greyhound Is a Person, Nor Does Plaintiff Attempt to Show Otherwise

First, Greyhound is a "person" within the meaning of the Federal Officer Removal Statute, and Plaintiff does not attempt to show otherwise.  As Plaintiff admits in its Complaint, Greyhound is corporation.  ECF No. 1-1 at 7.  And as the Courts of Appeal, including that for the Ninth Circuit, "have uniformly held," "corporations are 'person[s]' under [the statute]."  *Goncalves*, 865 F.3d at 1244.

### 2.    There Is a Connection or Association, And Indeed a Causal Nexus, Between Greyhound's Actions, Taken Pursuant to the Directions of Federal Officers, i.e., CBP Agents, And Plaintiff's Claims, And Plaintiff Fails to Show Otherwise

Second, there is a connection or association—indeed, there is a causal nexus— between Greyhound's actions, taken pursuant to the directions of federal officers, i.e., CBP agents, and Plaintiff's claims.

CBP agents are federal officers and CBP is a federal agency.  *See Pavlov v. Parsons*, 574 F. Supp. 393, 397 (S.D. Tex. 1983).

CBP and CBP agents have broad authority to conduct operations in support of national security, including "transportation checks," which entail "inspection of interior-bound conveyances" like "buses."  Miller Decl., Ex. 1 at 3 & Ex. 2 at 1 (Section 1357 and

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 8



**WITHERSPOON·KELLEY**
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

other statutory provisions "authorize[ ] U.S. Border Patrol agents to board and search vehicles or conveyances for aliens within a reasonable distance from the U.S. border"). Indeed, CPB promotes its authority on its website. *Id.* at Ex. 7 at 2 ("*Legal authority for the Border Patrol: What is the legal authority for the Border Patrol to operate checkpoints and engage in other activities to detect illegal aliens in the United States?, Sep 27, 2019*").

Transportation checks by CBP agents are "conducted at a variety of public transportation access points including … bus stations"—like the Spokane Intermodal Center—which serve as transportation hubs or nodes. *Id.*, Ex. 2 at 2. "Transportation hubs are increasingly used by smuggling organizations … to move smuggled people, narcotics, and contraband to destinations throughout the country." *Id.* "[T]ransportation nodes" are "key" to "stop smuggling and trafficking at or before they reach the border." *Id.*, Ex. 3 at 9.

"Checkpoints are an integral part of [CBP's] defense-in-depth, layered strategy." *Id.* at 28; Ex. 7 at 2 (same). CBP's strategy is not a new one. Since at least 2004, CBP has asserted that "enforcement actions will take place away from the physical border, at interior checkpoints, and lateral from those checkpoints," and that "assets" will be "deploy[ed] … to interior U.S. locations where there is a direct nexus to border control operations, such as at transportation hubs … and bus stations." *Id.*, Ex. 4 at "Message from the Commissioner" & 13. For years, CBP has promoted "Border Patrol Checkpoints" as a "vital component" of its "Defense in Depth border security strategy." *Id.*, Ex. 5 and 6. CBP has not limited

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 9



WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

this strategy to the "southwest border," but has extended it to the "northern border" as well. *Id.* at "Message from the Commissioner" and 17; *see id.*, Ex. 3 at 28 ("Checkpoints are facilities used by the Border Patrol to monitor traffic on routes of egress from areas on the Southwest and Northern borders").  At a "[p]roperly situated check point," whether permanent or temporary, like the Spokane Intermodal Center, CBP agents may conduct a "patdown search of a person," "examine information," and conduct a "non-destructive search of an object" for any "admin[istrative] reason" with "zero susp[icion]." Ex. 10 at 33 (capitalization omitted); Ex. 11 (same); *see* Ex. 9 (reproducing content appearing in Exs. 10 & 11).

As Plaintiff alleges in its Complaint, Greyhound's actions include (1) allowing CBP agents to board and search its buses at the Spokane Intermodal Center and (2) failing to warn its passengers of the fact and consequences of the agents' boarding and searching.  ECF No. 1-1 at 5-6, 7-18.  Although Greyhound's actions thus include failure to warn of boarding and searching as well as allowing boarding and searching, its primary actions consist of allowing boarding and search.  That is because, if Greyhound had not allowed boarding and searching, it would not have had anything to warn anyone about.

### a.    Greyhound Acted Pursuant to the Directions of CBP Agents

The first question to address is, Did Greyhound act pursuant to the directions of CBP agents in allowing them to board and search its buses at the Spokane Intermodal

WK    WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

Center?  The answer is, Yes.

For a person to act pursuant to a federal officer's direction, the person need only " 'act[ ] under' [the] federal officer.  Although the federal officer removal statute is not limitless, '[t]he words "acting under" are broad,' and the Supreme Court 'has made clear that the statute must be "liberally construed." '….  For a [person] to be 'acting under' a federal officer, the [person] must be involved in 'an effort to *assist*, or to help *carry out*, the [officer's] duties or tasks …." *Goncalves*, 865 F.3d at 1245 (emphasis original).

In allowing CBP agents to board and search its buses at the Spokane Intermodal Center, Greyhound acted under the agents because it was involved in an effort to assist or help them carry out their duties or tasks.

As noted, Section 1357 authorizes CBP agents to board and search Greyhound's buses at the Spokane Intermodal Center without a warrant or a warrant-exception, and thereby prohibits Greyhound from barring CBP agents from boarding or searching any of its buses there because of the absence of a warrant or warrant-exception.

In April 2018, "DHS informed Greyhound that CBP had the legal right to board buses and conduct immigration checks at terminals without consent or a warrant.  It was clearly conveyed that Greyhound needed to follow the directions of federal officers during immigration checks."  ECF No. 1 at 4.

And in January 2019, CBP "publicly assert[ed] its broad authority to conduct

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 11



WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

searches and immigration checks including the Spokane Intermodal Facility specifically." *Id.*

DHS thereby enlisted—or perhaps more accurately, impressed—Greyhound in an effort to assist or help CBP agents carry out their duties or tasks in boarding and searching buses at the Spokane Intermodal Center.

Plaintiff nevertheless attempts to show that Greyhound did *not* act pursuant to the directions of CBP agents in allowing them to board and search its buses at the Spokane Intermodal Center.  ECF No. 10 at 13-17.

Relying on the allegations of its Complaint, *see* ECF No. 10 at 14 (citing Compl. ¶¶ 23-27, 49-70 [ECF No. 1-1 at 12-13, 20-23]), Plaintiff asserts that, in allowing CBP agents to board and search its buses at the Spokane Intermodal Center, Greyhound did not act under the agents, but instead acted in accordance with its own "voluntary business decisions," ECF No. 10 at 14.

But Plaintiff's allegations about unspecified "voluntary business decisions" in its Complaint "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  And Plaintiff's assertion about the same unspecified "voluntary business decisions" here is no better.  It is hard to imagine that Greyhound could reasonably have made any "voluntary *business* decision" to engage in actions that could, and would, garner it such unfavorable, albeit undeserved, publicity.  *See*, *e.g.*, ECF No. 1-1 at 15-16.

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 12



WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100     Phone: 509.624.5265
Spokane, Washington 99201-0300     Fax: 509.458.2728

Not only does reliance on the allegations of its Complaint fail to help Plaintiff, they actually hurt it.

In its Complaint, Plaintiff alleges that "CBP's approach to conducting [immigration] enforcement sweeps relies on the cooperation of … Greyhound," and that Greyhound has given CBP the "cooperation" it has "relie[d] on." ECF No. 1-1 at 12. Through a footnote and an exhibit, Plaintiff also alleges that Greyhound is a "strategic partner" of CBP and is "committed to supporting CBP enforcement actions." Id. at 14 n.14 & 53-57 (Ex. 9). The first allegation is spin, without apparent basis. The second allegation is also spin, based not on any statement by Greyhound, but instead on an email from a "DHS Legislative Fellow" (also an Assistant Chief, U.S. Border Patrol) to a CBP official. The sense of these allegations, as spun, by Plaintiff is not that Greyhound happens to do something that happens to assist, or to help carry out, "immigration enforcement sweeps" by CBP agents, but that Greyhound allows CBP agents to board and search its buses in an effort to assist, and to help carry out, these very "sweeps." Plaintiff thereby effectively alleges that Greyhound was involved in an effort to assist or help CBP agents carry out their duties or tasks as their de facto agent."

Of course, notwithstanding the spin of Plaintiff's allegations, Greyhound's "cooperation" with CBP is hardly voluntary. Here are the facts on the ground, as recounted by Gregory Paige, a Greyhound driver who drove either to or from or through

**WK WITHERSPOON·KELLEY**
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

the Spokane Intermodal Center for more than 5 years until March 2020:

During my years driving for Greyhound, CBP agents boarded my buses frequently to conduct immigration checks at the Spokane Intermodal Center ....

The CBP agents who boarded my bus worked in teams of at least two agents. They wore khaki colored, military style uniforms and body armor. They were visibly armed with guns on their hips. CBP also had trained dogs with them and the dogs wore vests with Custom and Border Patrol insignia. The CBP agents' vehicles and uniforms were marked with Custom and Border Patrol insignia. I was the sole Greyhound employee with the bus and I was unarmed.

CBP agents never asked me for permission or my "consent" to board the bus. I never planned or coordinated any of CBP's activities with them, including their bus checks or boarding times. I am not aware of any other Greyhound driver doing so. Greyhound management never asked me to cooperate with CBP. Generally speaking, CBP was just there at the center when I showed up with my bus or was getting ready to depart. Drivers did not have an option. CBP waited for us to check passenger tickets and then they just boarded the bus. There was no choice in the matter.

CBP's normal procedure was to wait for me to check all of my passengers' tickets before CBP boarded the bus. After all the passengers boarded, one CBP agent would board the bus and go to the back of the bus, and the other agent would enter the bus just inside and stand by the door. I could not get on the bus because the agent was at the door. After the CBP agents were done on the bus, they would get off the bus, and then I would enter the bus to commence my route.

On some occasions, before boarding the bus, the CBP agent would ask me "Are you done" before boarding. On most occasions, CBP would just wait for the last passenger to get on the bus, and then the CBP agents would board. Again, they never asked for my permission or consent. They just got on the bus.

At some point in late 2017 or early 2018, I recall that CBP's activity picked up significantly at the Spokane Intermodal Center. Prior to this change, CBP agents were present 2-3 times during the 6 days I was present at the Spokane Intermodal Center; and there would be one CBP vehicle present in the bus slip area when I arrived or departed. After the change in or around 2018, CPB regularly had three CBP marked vehicles present and several more CBP agents were on site than in the past. After the change, CBP agents were present 4-5 times out of the 6 days I was at the center. After the change, CBP agents boarded buses more regularly, there were more CBP agents present at the Spokane Intermodal Center. While the Spokane Intermodal Center always seemed to be a CBP checkpoint, in 2018 and



thereafter there was definitely a lot more CBP activity. Based on my observations, CBP agents were almost always around and they boarded every bus that passed through the center. It went from one CBP team (2 agents) to multiple teams of agents (approximately 4-6 agents), and from one vehicle in the loading area to a whole army of trucks.

Paige Decl., ¶¶ 8-13 (paragraph numbers omitted).[3]

### b.    There Is a Connection or Association, And Indeed a Causal Nexus, Between Greyhound's Actions and Plaintiff's Claims

The second question to address is, Is there is a connection or association between Greyhound's actions and Plaintiff's claims? The answer is, again, Yes. Indeed, there is a causal nexus between the actions and claims.

"[T]he 'hurdle erected by [the causal-nexus] requirement is quite low.'" *Goncalves*, 865 F.3d at 1245. To clear this hurdle, Greyhound "need show only that the challenged acts"—allowing CBP agents to board and search its buses at the

-------

[3]    Plaintiff cites *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095 (2018), and *Washington v. Motel 6 Operating LP*, No. C18-337-MJP, 2018 WL 2277173 (W.D. Wash. May 18, 2018), to support its assertion that Greyhound did not act pursuant to the directions of CBP agents. *Fidelitad* and *Motel 6* are both distinguishable: In *Fidelitad*, unlike here, the defendant admitted that it had "no … communication" with any federal officer. 904 F.3d at 1100 & n.2. And in *Motel 6*, unlike here, the defendant admitted that it acted "voluntarily" and was "free to disregard … requests" by any federal officer. 2018 WL 2277173, at *2.

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 15

**WK** **WITHERSPOON·KELLEY**
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

Spokane Intermodal Center—" 'occurred because of what [it was] asked to do by [the CBP agents].' " *Goncalves*, 865 F.3d at 1245.

A fortiori, the hurdle erected by the connection-or-association requirement is even lower. To clear *this* hurdle, Greyhound need show only that its allowing of CBP agents to board and search its buses at the Spokane Intermodal Center " 'relate[d] to' " the agents' approaching of its buses there. *Latiolais*, 951 F.3d at 293.

Greyhound can clear the higher of these two hurdles and hence can clear the lower one too. To make the showing for the higher hurdle, Greyhound need only cite the allegations that Plaintiff makes in its Complaint. ECF No. 1-1 at 5-6, 7-18. To quote only one such allegation, Greyhound "allow[ed] CBP agents to board" and search "its buses" at the Spokane Intermodal Center "when they requested permission to do so." *Id.* at 14. Thus, Greyhound's conduct occurred because of, and related to, the CBP agents' conduct.

Plaintiff nevertheless attempts to show there is *no* causal nexus between Greyhound's actions in allowing CBP agents to board and search its buses at the Spokane Intermodal Center and the claims in its Complaint. ECF No. 10 at 17-18. In support, Plaintiff repeats its meritless assertion that, in allowing CBP agents to board and search its buses, Greyhound did not act under the agents, but instead acted in accordance with its own "voluntary business decisions." Repetition, however, does not make the assertion any less meritless. Since Plaintiff fails to show there is no causal

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 16

WK  WITHERSPOON · KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

nexus, it necessarily fails to show there is no connection or association.[4]

### 3. Greyhound Can Assert a Colorable Federal Defense, And Plaintiff Fails to Show Otherwise

Third, Greyhound can assert a colorable federal defense against Plaintiff's claims, specifically, one based on the doctrine of conflict-preemption.

"To be 'colorable,' the asserted federal defense need not be 'clearly sustainable,' as [the Federal Officer Removal Statute] does not require a federal official or person acting under him 'to "win his case before he can have it removed." '… Instead, an asserted federal defense is colorable unless it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial and frivolous.' " *Latiolais*, 951 F.3d at 296-97.

Whatever Plaintiff might claim about Greyhound's purpose in asserting its federal defense of conflict-preemption, the defense is colorable because, as will appear, it is *neither* immaterial *nor* wholly insubstantial and frivolous. At their core, Plaintiff's claims allege that Greyhound engaged in unlawful conduct under the CPA and WLAD

---

[4]    Plaintiff cites *Massachusetts v. Exxon Mobil Corporation*, No. 19-12430-WGY, 2020 WL 2769681 (D. Mass. May 28, 2020), to support its assertion there is no causal nexus between Greyhound's actions and the claims in its Complaint. *Exxon-Mobil* is distinguishable. There, there was no causal nexus of any kind. *Id.* at *11. Here, as shown in the text, the causal nexus is direct and strong.

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 17

WK WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100        Phone: 509.**624.5265**
Spokane, Washington 99201-0300              Fax: 509.**458.2728**

by allowing CBP agents to "unlawfully" board and search its buses at the Spokane Intermodal Center.   In other words, they allege the CPA and WLAD required Greyhound to bar CBP agents from "unlawfully" boarding and searching its buses there, but that it failed to do so.

State law that conflicts with federal law is preempted and is thereby rendered invalid.  *ONEOK, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376 (2015).  State law conflicts with federal law:  (1) where it is impossible to comply with both federal and state law, *id.* at 377; (2) where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress as reflected in federal law, *id.*; or (3) where there is "immunity" under *Boyle v. United Technologies Corp.*, 487 U.S. 500, 507 (1988), i.e., where there is an area of uniquely federal interest and a significant conflict exists between the federal interest and the operation of state law.

Recall that, as a general matter, the establishment and operation of a temporary checkpoint by CBP agents pursuant to Section 1357 is consistent with the Fourth Amendment when the location in question, like the Spokane Intermodal Center, is within 100 air miles from the United States-Canada border.

And recall that, specifically, Section 1357 authorizes CBP agents to board and search Greyhound's buses at the Spokane Intermodal Center.  The Mayor of the City of Spokane has recognized as much.  The Spokane City Council passed Ordinance No. C35681, purporting to prohibit CBP agents from, among other things, using nonpublic

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 18

**WK WITHERSPOON · KELLEY**
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100     Phone: 509.**624.5265**
Spokane, Washington 99201-0300     Fax: 509.**458.2728**

areas in the Spokane Intermodal Center to board or search Greyhound's buses there, except with the "express, written approval of the Mayor." Miller Decl., Ex. 8 at 5. The Mayor determined not to enforce the ordinance because Section 1357 authorizes CBP agents to search and board Greyhound's buses there. *Id.*, Ex. 12 at 2-3, Ex. 13 at 2, 5-7 & Ex. 14 at 1 ("Operationally, these agents don't seek permission or consent from a local elected official or municipal employee to complete their assignments, so neither the Mayor nor City employees have the authority to impede such activity"). By authorizing CBP agents to board and search Greyhound's buses there, Section 1357 prohibits Greyhound from barring them from doing so.

To the extent the CPA and WLAD *require* Greyhound to do what Section 1357 *prohibits* Greyhound from doing—i.e., barring CBP agents from boarding and searching its buses at the Spokane Intermodal Center—the CPA and WLAD are in conflict with Section 1357 and, as such, are preempted for each of three reasons. *First*, Greyhound cannot comply with both the CPA and WLAD and Section 1357. *Second*, the CPA and WLAD stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress as reflected in Section 1357, i.e., to provide for the uniform enforcement of uniform immigration law. *Third*, there is "immunity" since immigration is an area of uniquely federal interest and a significant conflict exists between the federal interest as revealed in Section 1357 and the operation of the CPA and WLAD. Underlying each of these three reasons is the fact the CBP agents'

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 19



WK WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

boarding of Greyhound's buses at the Spokane Intermodal Center was lawful—and certainly Greyhound, which is not a court, was not competent to determine otherwise.

Because Plaintiff's claims are based on the CPA and WLAD, and because the CPA and WLAD are preempted and, as such, rendered invalid, Plaintiff's claims are deprived of legal support and collapse under their own weight.

Plaintiff attempts to show that Greyhound cannot assert a colorable federal defense of conflict-preemption. ECF No. 18-23. Plaintiff asserts that it is possible for Greyhound with Section 1357 as well as the CPA and WLAD because, it says, Section 1357 "imposes no obligation" on Greyhound. *Id.* at 22. Nonsense. As shown, in authorizing CBP agents to board and search Greyhound's buses at the Spokane Intermodal Center, Section 1357 prohibits Greyhound from barring them from doing so—in other words, it imposes an obligation not to stand in their way.

Plaintiff next asserts the CPA and WLAD do not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress as reflected in Section 1357. Also nonsense. To the extent the CPA and WLAD require Greyhound to bar CBP agents from boarding and searching its buses at the Spokane Intermodal Center, they prevent the uniform enforcement of uniform immigration law, which under Section 1357 prohibits a bus company or anyone else from barring CBP agents from boarding or searching buses at any permanent or temporary checkpoint within 100 air miles from any external boundary of the United States.

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 20



WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

Plaintiff then asserts there is no "immunity." Tellingly, Plaintiff does not deny that immigration is an area of uniquely federal interest. Neither does Plaintiff deny that a significant conflict exists between the federal interest, as revealed in Section 1357, and the operation of the CPA and WLAD. Instead, Plaintiff uses lower court decisions in a transparent effort to limit *Boyle* in such a fashion as to render it inapplicable to this case. Even if it could thus succeed in knocking out the "immunity" basis for conflict-preemption, the two other bases would remain.[5]

Lastly, Plaintiff asserts that, in addition to alleging that Greyhound engaged in unlawful conduct under the CPA and WLAD by allowing CBP agents to "unlawfully" board and search its buses, its claims also allege that it failed to warn its passengers of the agents' "unlawful" conduct and of the consequences of such conduct. True, but immaterial. As noted, there was no "unlawful" conduct to warn of.

## IV.    CONCLUSION

For these reasons, this Court should deny Plaintiff's Motion to Remand. Because that is so, it should also deny its request for an award of fees and costs.

---

[5]    Plaintiff cites *Motel 6* to support its assertion of no "immunity." Again, *Motel 6* is distinguishable. There, unlike here, there was no "immunity" because the defendant did "not establish[ ] any 'significant conflict' between the CPA and WLAD and federal immigration policy." 2018 WL 2277173, at *3.

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 21

**WK** WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

1    Dated this 23rd day of July, 2020.

2                                     WITHERSPOON · KELLEY

3                          By:    /s/  William M. Symmes
4                          WILLIAM M. SYMMES, WSBA #24132
                           STEVEN J. DIXSON, WSBA #38101
5                          422 West Riverside Avenue, Suite 1100
6                          Spokane, Washington 99201-0300
                           Phone: 509 624-5265
7                          Fax: (509) 458-2728
8                          Email: wms@witherspoonkelley.com
9                                  sjd@witherspoonkelley.com

10

11                                   REED SMITH LLP

12                         By:    /s/  Jesse L. Miller
                           JESSE L. MILLER (*Pro Hac Vice*)
13                         JENNIFER R. FEARNOW (*Pro Hac Vice*)
14                         101 Second Street, Suite 1800
                           San Francisco, CA 94105-3659
15                         Telephone: (415) 543-8700
16                         Facsimile: (415) 391-8269
                           Email:  jessemiller@reedsmith.com
17                                 jfearnow@reedsmith.com

18
                              *Attorneys for Defendant Greyhound Lines, Inc.*
19

20

21

22

23

24

25

26

27

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 22

**WK** **WITHERSPOON · KELLEY**
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of July, 2020 the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF System.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system to the following:

Lane Polozola
Yesica Hernandez
Assistant Attorneys General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Lane.polozola@atg.wa.gov
Yesica.hernandez@atg.wa.gov
***Counsel for Plaintiff***

/s/ Jesse L Miller
Jesse L Miller (Pro Hac Vice)
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: (415) 543-8700
Facsimile: (415) 391-8269
Email: jessemiller@reedsmith.com

DEFENDANT GREYHOUND
LINES, INC.'S OPPOSITION TO
MOTION TO REMAND - 23



**WITHERSPOON·KELLEY**
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**